# AFFIDAVIT

DISTRICT OF COLUMBIA

I, Iona Calhoun, Management/Program Analyst, GS-13, General Services Administration (GSA), Office of Governmentwide Policy, Office of Real Property, Real Property Policy Division (MPR), 1800 F Street, N.W., Washington, D.C. 20405, being duly affirmed under oath, make the following statement freely and voluntarily to Brenda J. Smith who has identified herself to me as a Contract EEO Investigator for Draughn & Associates. My complaint of discrimination is based on sex (female), race (African American), Color (Black), age (58) and reprisal (prior EEO and union activity).

I have been employed with GSA since 1977. I was transferred to my present position August 2001. Prior to that, I worked as a Computer Specialist in the Office of Information Technology, Office of Governmentwide Policy (OGP), since its inception around 1995. Most of my career at GSA was in Information Resources Management and Information Technology (IT).

Prior to joining GSA I worked for the Office of Management and Budget (OMB) as a Management Analyst, GS-11, a position with a career ladder to a GS-13. I was due at the time of transfer for a promoted to GS-12. GSA did not promote me to a GS-12 for an additional year. I came to GSA equipped to handle the challenges of higher level positions with a degree in Business Administration from The George Washington University. In my initial position in GSA, Management Analyst/Committee Management Secretariat (CMS) Specialist (GS 11/12), I performed the higher level functions and responsibilities of a GS-13/14/15 CMS Specialist. GSA denied me the promotion(s), pay, and awards for the level of work that I performed.

GOVERNMENT EXHIBIT 13

EXHIBIT

000112   PAGE  1  OF 10 PAGES



Due to GSA's continuous discrimination and the undermining of the merit promotion, EEO, and labor processes, I filed a number of EEO complaints, Unfair Labor Practices (ULPs), grievances, two class action complaints and a Civil Action complaint (2001) against NFFE National, GSA Council of Locals, and GSA for collusion.

I have filed complaints as an employee and as the members' elected President, NFFE Local 1705. The first complaint filed was a 1989 union grievance, followed by the filing of several EEO complaints, which were consolidated. This complaint was settled with the promotion of all the Black employees in the division to a GS-13.

Due to the ingrained institutionalized racism at GSA the ongoing reprisal and disparate treatment continued because of my refusal to be treated differently. It appeared that management *marked* me for no more promotions. I have applied, qualified, and been passed over by GSA officials for numerous promotions/vacancy announcements (over 200) during my tenure. In my 25 years as a GSA employee, I *never* received a competitive promotion.

First I would like to state this EEO issue is about **REPRISAL, the malicious sabotage of my career,** and the **continuous violations** of my rights as an employee and an elected union official under Title VII.

In terms of reprisal and management's knowledge of my involvement in a prior EEO and union activities;

- *I know* that GSA officials Edward Denney (White, male), Director, Labor Relations; Marty Wagner (White, male), Associate Administrator and John Sindelar (White, male) Deputy Administrator, OGP; are aware of my EEO complaints and union activities. Over the years, they have been involved in negotiations with the Local on the Central Office (CO) Regional level and have conduced negotiations with me as the *elected* Regional Vice President (RVP), and on the local level as the *elected* President, NFFE Local 1705. *(Marty Wagner was the GSA signing official in the settlement of my first complaint.)*

000113

EXHIBIT 11
PAGE 2 OF 10 PAGES
Initials: [illegible]



- *I know* that due to collusion with GSA officials and the National Federal of Federal Employees (NFFE), GSA management does not recognize me as the *elected* (Black, female) NFFE official. In violation my rights under Title VII, I have been removed from the right to negotiate the changes in management policies, reorganizations, and other activities affecting the CO bargaining unit employees.

- *I know* that due to collusion, Edward Denney agreed to the appointments of Council representatives William (Bill) English (White, male), John (Jack) Hanley (White, male), John Stickler (White, male) as the Regional Vice President(s) of GSA Central office. He has denied the members' elected officials from the representation of Local 1705's bargaining unit employees.

- *I know* that GSA does not want Local 1705's elected Local officials involved in any negotiations because we try to negotiate to protect the interest of the bargaining unit employees. GSA does not want to be questioned about A-76 studies, or negotiate those activities involving outsourcing and contracting-out -- activities which disproportionately, negatively impact lower grades and minority employees (see Exhibit _____).

- *I know* that due to collusion and reprisal between Edward Denney, OGP officials, and NFFE Council Officials John H. Hanley and William (Bill) English (White, male) is the reason I was transferred out of the Office of Information Technology to the Office of Real Property. And *without my knowledge,* as reprisal, my position was changed from a Computer Specialist to Management and Program Analyst (see Exhibit _____).

- *I know* that as reprisal for my activities against GSA and NFFE that I was transferred to Stanley Langfeld for him to *control me* (see Exhibit _____).

- *I know* that GSA and Stanley Langfeld, under the guidance of Labor Relations' officials, are discriminating against me as an employee and as an elected union official. Mr. Langfeld has:

000114



EXHIBIT _____11_____
PAGE _3_ OF _10_ PAGES
Initials: _____



- Charged me up for insubordination for attending a Human Resources (HR) Training class on HR techniques which management can use on the CO bargaining unit employees;
- Stated, after sending me on an assignment, that I will be considered AWOL if I am away from my desk for longer then 30 minutes;
- Ordered me not to request IT training or I will be charged with insubordination;
- Stated that I cannot use Annual Leave to attend training (whether or not I request this training). If I use annual leave to attend training which he has not approved, Mr. Langfeld stated that I will be written up for insubordination (see Exhibits _____).

- *I know* that GSA officials have done *nothing to stop* Stanley Langfeld's abuse (see Exhibit _____).

- *I know* that management discusses union grievances, EEO complaints, and class action complaints -- among other things. Mr. Langfeld knows about some of these issues.

As far as *I know*, there is *no* requirement that training had to be directly related to my position, the mission of the division, or even the office. GSA training is not narrowly defined as long as the information would enhance an employee's knowledge and skills. Before my transfer to MP, I attended many (free) training sessions, seminars, and meetings to enhance my knowledge and keep abreast of GSA's governmentwide initiatives (see Exhibit _____).

In practice, the Office of Real Property (MP) and the Real Property Policy Division (MPR) does very little work in real property. Many of MP's initiatives use information technology (IT) to help make other agencies more efficient in its management and operations of real property. Mr. Langfeld's email notes of April 18, 2002 to MPR Associates clearly detail the following *IT initiatives* for the MPR Division: E-Real Estate, FIRM, GRPIS Website, Wideworld Inventory (WWI) (see Exhibit ____).

000115

EXHIBIT 11
PAGE 4 OF 10 PAGES
Initials: JC



Before my transfer there were several occasions where GSA managers denied me higher level training which involved the development of leadership and technical expertise for higher level positions.

- The first time I was denied training involved graduate-training courses. My supervisor (GS-15) was a younger, (White, female) who was working on her Bachelor Degree. She approved three graduate courses. However, after she found out that I was accepted as a graduate student she rescinded payment of the third course and denied job-related, graduate training courses stating that I needed training on a *lower plane*. I filed an EEO complaint. Upon settlement of this complaint, GSA resumed payment of the courses. GSA did not reimburse me for the three job-related training courses I paid during the timeframe between my supervisor's refusal and settlement of my complaint.

- My next denial of training involved the same supervisor who refused to allow me to attend GSA's Trailboss classes in procurement. She approved some employees several times and an analyst (White, female, GS-13) who was a new GSA employee. When my next supervisor (White, male) found out that I was the only employee in the Division who had **never** attended Trailboss, he sent several requests to the Director of the Office, (White, male) for approval. The Director refused to respond to the Trailboss training requests, which required his approval. Over the years, every employee in this Office was allowed to attend Trailboss, *except for me*.   000116

- While still employed in the Office of Information Technology, I applied for training to obtain a CIO Certificate under a training program in association with the GSA and the Federal CIO Council. My acceptance was based on a letter I received from the University based upon my status as a graduate student and my completion of a Master of Science in Computer Systems Management with an Information Resources Management (IRM) Track. The Director, Executive Technology Programs, University of Maryland University College, called me. He stated that he was informed by GSA officials that **"GSA's requirement"** was that I had to be a GS-14 to receive training, or have a letter written by



my supervisor stating I was performing GS-14 functions and responsibilities. Since I performed GS-14 functions and responsibilities, I did not anticipate a problem because my former supervisor believed that a well-trained and knowledgeable employee was a benefit to the office and GSA. However, to my surprise, he ignored my requests to write a letter. He would not give me a reason for not writing this letter. I believe OGP officials let it be known that they did not want me to take this training. I also discussed this training with the Tom Horan, Acting Director (White, male), who just shrugged and stated the course cost a lot of money. (*Mr. Horan was also involved in my first grievance/EEO complaint.*

My previous supervisor also presented a GS-14 vacancy announcement to Mr. Horan who refused to post this position. Several months later, another GS-14 position was posted. I applied. GSA officials promoted a Computer Specialist (White, female) who started at GSA around 1994 in a position similar to an Administrative Assistant (GS-6 or GS-7). I filed an EEO complaint.

When I first came on board in the Real Property Policy Division (MPR), Mr. Langfeld appeared to be very open. While showing me around the office, he pointed to a large array of training materials stating, **"You can take anything you want."** Shortly after my transfer, I requested to attend the Blacks in Government (BIG) Training Conference. After several months without receiving a response, I requested Mr. Langfeld's approval. He stated that money was "tight" -- there was no money for me to take training. Each time I spoke to Mr. Langfeld he changed his story. Next, I was informed that I was not on the BIG training list and only two employees were approved to attend each year. I was informed that I had to "wait my turn" (see Exhibit _____).

000117

I asked for the Office's policy on training since Mr. Langfeld had stated to me there was an Office policy which he did not provide. There is *no* policy. Mr. Bibb sent an email to Mr. Langfeld to *"remind him"* that approximately three years ago, management decided to limited employees to two (2) courses per year.

EXHIBIT __11__

PAGE __6__ OF __10__ PAGES

Initials: _QC_

I again asked why training money was not available for me when I had not used any training funds. Then, I was informed that I could attend other training – but, *not* BIG. I amended my requested to attend the Federally Employed Women's (FEW) Training Conference. Supposedly, money was tight and training funds were limited. However, the FEW Conference cost *more* money to attend than the BIG Conference. *It is obvious money is not the issue!*

OGP's practice is **discrimination.** This practice is used to specifically to limit the number of (Black) employees who can attend BIG to two employees an Office. The limitation is not based on the employee's use (amount) of annual training funds. The limitation is imposed whether that Office has five or twenty-five Black employees. There does not appear to be the same limitation (2 employees per Office) applied by management for training conferences frequented by mostly White employees.

I found out about the Armed Forces Communications and Electronics Association luncheon (free) through the April 24, 2002, GSA Update. The Update is an electronic newsletter that advises employees on things that are going on at GSA, such as training, reorganizations, IT issues and other initiatives. The Administrator (African American) of GSA was the guest speaker at the luncheon. I thought this would be a good session to attend to hear what our Administrator's views and initiatives were for the agency. As stated in the GSA notice *"The luncheon is being provided free of charge for federal employees, and it, therefore, is appropriate for GSA associates to attend."* (See Exhibit _____).

I asked Mr. John D. Thomas, Team Leader, for permission to attend the luncheon. After discussion with Mr. Langfeld, he denied my request stating the training was not related to real property. An administrative assistant (Black, female) and a management analyst (White, female) from the Office attended. At events of this type where the Administrator or an OGP official is a speaker, management usually encouraged employees to attend not only for the visibility of numbers -- high attendance, but to keep employees up-to-date on GSA's initiatives.

000118

EXHIBIT _11_

PAGE _7_ OF _10_ PAGES

Initials: _QC_

For nearly five years I have been a member of the Smart Card Managers Group in the capacity of President, NFFE Local 1705. My presence at the Smart Card meetings is essential in order be aware of the privacy concerns and to protect the interests of the employees. The meetings help keep me abreast of IT initiatives and new developments in the use of the Smart Card. The use of the Smart Card impacts real property because each employee must use a Smart Card as identification to gain access to GSA and other Federal buildings. Each card has a "chip" on it that contains particulars about an employee, i.e., race, age, area of work, etc. and may contain built in security measures.

Under the guidance of Labor Relations, Mr. Langfeld denied my requests to attend the Smart Card meetings. The meetings are held once a month for approximately 3 hours at the AIA Building located on the 18th Street NW, directly across from the GSA. Consequently, there should not be a problem with my attending a meeting that is held once a month. Again, management's *denial* of training has to do with control and violations of my rights because the training *is* work related.

Mr. Langfeld contacted Ms. Lovie Leach, Labor Relations, for advice regarding my attendance at the meetings. Ms. Leach advised Mr. Langfeld that *"I do not have the kind of position"* as an employee that requires my attendance at the Smart Card meetings. Smart Card is an OGP (IT) initiative (see Exhibit _____).

I found out about the Government and Media Perception and Reality Seminar via an email notification due to previous attendance. One of the analysts from this Office was on the Seminar committee. The seminar is geared toward teaching attendees marketing techniques to enhance their agency's programs. GSA has a wide spectrum of customers—other agencies. It's important to keep abreast of what other agencies are doing and how we can use this information to improve the way we market our activities and services. Mr. Langfeld denied my request stating the training is not related to real property.

000119

I have attended training relative to real property – the Appraisal of Real Property. However, training in Real Property is very limited. Mr. Langfeld stated that I need Real Property training, yet when I

Page 8 of 10   EXHIBIT __11__   Initials: JC
PAGE __8__ OF __10__ PAGES

requested more training to obtain certification as an appraiser as quickly as possible, he stated that I am limited to two training courses, or a training course and a training conference (BIG or FEW) per year. He also stated it would be inappropriate for me to take training to become a certified as an Appraiser (see Exhibit _____).

As I stated before, my previous supervisor encouraged his employees to take free government training as frequently as possible to supplement our knowledge and keep abreast of the IT changes and challenges faced by the government. Training such as the Media and Perception, Smart Card meetings, Knowledge Management, FOSE, etc. are the types of *free* training open to government employees and the training relates to OGP's and GSA's mission (see Exhibits _____). Until my transfer to MP, I attended this type of training frequently. Mr. Langfeld turned **180** degrees from his initial statement to me, *"You can take anything you want."*

***I know*** that I was assigned to Mr. Langfeld for him to harass me and cause me enough stress so that I will leave the agency because Management is fully aware that I am eligible to retire and they want me to leave GSA. By limiting my movements and training, tying my hands, reprisal and the disparate treatment, they hope to force me to leave to alleviate having to respond to questions regarding the bargaining unit employees, EEO complaints, and ULPs.

GSA officials and Mr. Langfeld's continuous denial of training is not about training, it is about **control** and to **deny me my rights** and an employee and union official. The actions certainly work to intimidate the bargaining unit employees. GSA's actions are based on my sex (female), race (African American), Color (Black), age (58), and in reprisal for having participated in a prior EEO and union activities.

There appears to be no accountability for managers to adhere to Federal laws and regulations. This is obvious because I am still denied my rights by essentially the same managers that are involved in my other grievances and EEO complaints in one form or another.

000120

I have read the above statement consisting of nine (9) pages. It is true and complete to the best of my knowledge and belief. I have made all necessary corrections and additions, initialing each page. I

EXHIBIT _____11_____

understand that the information I have given is not to be considered confidential and that it *may be* shown to the interested parties – *only* if I am *also privy* to the interested parties' information.

*Tona D. Calhoun*
Affiant's Signature

Subscribed to and (sworn/affirm) before me at GSA on this 13 day of March, 2003

*Brenda J. Smith*
Investigator's signature

**Exhibits**

000121

EXHIBIT 11
PAGE 10 OF 10 PAGES