AFFIDAVIT

City: Washington, D.C.

I,      Stanley Langfeld, Director, GS-1170-15/10, Real Property Policy Division, Office of Real Property, Office of Governmentwide Policy, General Service Administration, make the following statement freely and voluntarily in response to questions posed by Sandra Maddox, EEO Investigator, and provided information pertaining to the formal complaint of discrimination of Iona Calhoun. I hereby solemnly swear/affirm to the truth of the following statement:

1.      My name is Stanley C. Langfeld. I am the Director of the Real Property Policy Division, Office of Real Property, Office of Governmentwide Policy, GS-1170-15/10. During the time at issue, my first level supervisor was David L. Bibb, Deputy Associate Administrator, Office of Real Property, from January 1997 to July 2003; then from July 2003 to December 2003, Mr. Bibb served as Acting Deputy Administrator; and effective December 2003 Mr. Bibb was permanently reassigned as Deputy Administrator. During that timeframe, there were three individuals including myself rotating to the position of Deputy Associate Administrator, Office of Real Property, Office of Governmentwide Policy. Mr. Marty Wagner was Mr. Bibb's supervisor. He is the Associate Administrator, Office of Government wide policy. During the time at issue, I was Ms. Calhoun's first level supervisor.

Issue 1        On October 7, 2003 Complainant's request to take the Course 410, entitled, Uniform Standards of Professional Appraisal Practice was denied.

2.      In July or August every year we put together a training plan for our associates that includes two training opportunities. They ask for courses that they want to take at that point. In August 2003 Ms. Calhoun had already been approved for her two FY 2004 training courses. One was an OPM course on Developing and Communicating Leadership Competencies and the other was a Real Estate Law course. We put that down in her training plan. (Exhibit 1) On October 6, 2003, she requested to take the Uniform Standards of Professional Appraisal Practice (USPAP), Course 410 of the Appraisal Institute. (Exhibit 2) I told her that the course did not pertain to what we do regarding the Real Property Policy Division mission, so she could not take it. The course is intended for people who have their own appraisal business, and the Course 410 prospectus clearly states, "Learn how the latest requirements of USPAP affect your appraisal business...," and she does not have her own appraisal business nor will she be required to conduct appraisal activities as part of her work in the Real Property Policy Division. (Exhibit 3) She has taken two introductory courses, Appraisal Principles, (Course 110) and Appraisal Procedures (Course 120). Subsequent to taking these two introductory courses, she provided me with a certificate stating she "successfully completed" Course 110, and with a certificate stating she "attended" Course 120. (Exhibits 4 and 5) Having completed these two courses, she had been exposed to the

GOVERNMENT EXHIBIT 28

Initials _____

basic principles and procedures concerning real estate appraisals, similar to the knowledge held by other employees in my division. Therefore, it was unnecessary to take another course targeted at individuals who actually conduct appraisals.

3. No one else under my supervision asked to take Course 410, USPAP, nor has anyone taken this course. If anyone else under my supervision requested approval for this course, I would have turned it down. Again there would be no need for them to ask for it, because it is for people who have their own appraisal business and we do not do appraisals in this office.

4. Ms. Calhoun's race and sex had nothing to do with her being denied approval for Course 410, USPAP. I am aware of her prior EEO because I was involved. I was named in her prior complaints. As I stated, however, this had nothing to do with her not being able to take this course. Every associate is allowed 2 training events every year and she has had them each year. For FY 2002 (10/1/01 – 9/30/02) she successfully completed Appraisal Principles and she attended the Federal Employees Women's Conference. For FY 2003 (10/1/02 – 9/30/03) she attended Appraisal Procedures and Blacks in Government Conference in Denver, Colorado. For FY 2004 (10/1/03 – 9/30/04) she attended the OPM courses Developing and Communicating Leadership Competencies, and Dynamics of Public Policy.

5. Ms. Calhoun has asked to take other courses that have nothing to do with her assigned duties and those requests were also denied. No employees are allowed over their two training opportunities a year unless they are a scheduled speaker. Even then we try to get them to count that as one of their training opportunities - due to budgetary considerations and since they are actively participating in the training event.

Issue 2.   On October 20, 2003, Complainant's request to attend the Building Owners and Managers Association ("BOMA") annual training conference in 2004 as a designated representative for GSA was denied.

6. Ms. Calhoun was not approved to attend the BOMA conference. We have only two people who attend that conference, since the Office of Real Property longstanding policy is that no more than two associates may attend a given conference. We rarely deviate from this policy. The only instance that comes to mind was in November 2003 when the four members of the Governmentwide Real Property Information Sharing Program Team participated in the Joint Ventures: Partners in Stewardship Conference in Los Angeles, CA. We already had two representatives, Ron Whitley (white male) and David Bibb (white male), Deputy Associate Administrator. Whitley has been designated for years as a representative. David Bibb always attends the BOMA conference because it is a high level networking opportunity for the office. On November 19, 2003, Ms. Calhoun asked David Bibb if she could go to the conference because I told her that he always went. On November 20, 2003, he told her that since he was detailed to another job (i.e., Acting Deputy Administrator) he was not planning to attend the BOMA Conference. His feeling was that it is a high level networking conference and a higher level official

should attend, since in the past his purpose in attending has been primarily to utilize these opportunities to develop the Office of Real Property's relationship at the top leadership levels of BOMA. He stated that in his absence, the same principle applies, and that he would fully endorse attendance by the Acting Deputy Associate Administrator for the Office of Real Property or by one of the other three division directors for the purposes for which he normally attended. (Exhibit 6) If anyone else under my supervision asked to attend BOMA, I would have declined their request since they would not have been the high-level officials we wanted to send. Ms. Calhoun's race, sex and prior EEO activity were not factors in that decision.

Issue 3.   On October 20, 2003, Complainant learned via email that she was not selected for the Program Expert, GS-14 position advertised under vacancy announcement #03008903MP.

7. I was the selecting official for the GS-14 Program Expert position. I selected Kenneth Holstrom (male, white). I do not know if he has prior EEO activity. I made the selection myself. There were 4 applicants at the GS-13 level and one GS-14 applicant.

8. I did not select Ms. Calhoun for several reasons. First, she had no indepth Real Property experience. She had only been dealing with real property issues for 3 years. Second, she improperly stated in her application that she was a GS-14, but she is a GS-13. (Applicant's should have had accurate information in their applications). Third, she gave an example of her work in her application that she did poorly in. Her application says she analyzed real property topics for the GENERAL REFERENCE GUIDE FOR REAL PROPERTY POLICY. This is an assignment that she did poorly and her poor performance is referenced in her 10/11/02 performance rating.

9. In contrast, Mr. Holstrom was better qualified because he had at least 29 years of indepth government Real Property experience in the National Capital Region and in the Central Office. His application demonstrated that he is experienced in policy analysis and development in the Public Building Service. He has excellent writing skills and he is a Real Property Regulatory expert. Of all of the applicants he was the best qualified person.

10. Ms. Calhoun sent me an email about her nonselection and asked "what is your reason for nonselection." I explained to her what I looked for. I told her that "I selected the best qualified candidate based on their experience in Government real estate, and their knowledge, skills and abilities related to Government real estate. The qualifications of the person that I selected exceeded all of the other candidates." Also, she asked "how can I increase my chances for future promotion to the position in question." I explained that "generally GS-14 positions in the Real Property Policy Division require indepth knowledge of Government real estate, and extensive experience that developed the person's knowledge, skills and abilities in Government real estate. They must be able to independently perform these duties with minimal supervision and produce high quality work products in a timely manner." (Exhibit 7)

11. Ms. Calhoun's race, sex and prior EEO activity had nothing to do with her nonselection.

I have read the above statement, consisting of 4 pages, and it is true and correct to the best of my knowledge and belief. I have initialed each page, and I have been given an opportunity to make any corrections. I understand that the information I have given is not to be considered confidential, and that it may be shown to the interested parties.

*Jeanette Jerman Artis*
Witness
Date 6-15-04

My Commission Expires: Feb. 14, 2007

*Stanley C. Langfeld, 6/15/04*
Stanley Langfeld