UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                                    )
IONA D. CALHOUN,                                   )
                                                                    )
                     Plaintiff,                              )
                                                                    )
          v.                                                     )    Civil Action No. 06-1441 (HHK/JMF)
                                                                    )
DAVID L. BIBB, ADMINISTRATOR,          )
GENERAL SERVICES ADMINISTRATION,  )
                                                                    )
                     Defendant.                           )
_____ )

## MOTION TO DISMISS OR FOR SUMMARY JUDGMENT[1]

Pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, Defendant,

David L. Bibb, Administrator of the General Services Administration, respectfully moves to

dismiss the complaint in this case.  Alternatively, Defendant moves for summary judgment

pursuant to Fed. R. Civ. P. 56.  As set forth in the Memorandum of Points and Authorities in

support of this motion, Plaintiff has failed to state a claim upon which relief can be granted.

Alternatively, there are no material facts in genuine dispute and Defendant is entitled to

judgment as a matter of law.  Wherefore, Defendant respectfully requests that Plaintiff's

complaint be dismissed with prejudice or summary judgment entered in Defendant's behalf.

_____

[1] On June 10, 2008, Defendant moved this Court, *inter alia*, to extend the dispositive motion
deadlines, to and including August 18, 2008. Docket Entry # 37.  Plaintiff opposed this motion
[*id*. at # 38] and, at a July 7, 2008 discovery proceeding before Magistrate-Judge Facciola
represented, through counsel, that she was ready for trial.  The proposed motion to extend the
dispositive motion deadline was not ruled on by Judge Facciola because he believed it was
outside of his authority to do so under the referral order. *See* Docket Entry # 36. Accordingly,
that motion is still pending and Defendant files the instant motion on the date proposed for
dispositive motions, August 18, 2008.  Presently, the only schedule matter in this case is a Status
Conference before this Court on October 2, 2008, at 11:30 am. *See* Minute Notice dated July 8,
2008.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

OF COUNSEL:
F. ALLEN PHAUP II
Assistant General Counsel
United States General Services Administration
Office of General Counsel
General Law Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
IONA D. CALHOUN,                        )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )   Civil Action No. 06-1441 (HHK/JMF)
                                        )
DAVID L. BIBB, ADMINISTRATOR,           )
GENERAL SERVICES ADMINISTRATION,        )
                                        )
            Defendant.                  )
_____ )

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

I. PRELIMINARY STATEMENT

Plaintiff Iona Calhoun ("Plaintiff"), a former employee of the General Services

Administration ("GSA"), alleges: (1) racial and sexual discrimination in violation of Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (2) age discrimination in

violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (3)

retaliation in violation of Title VII and the ADEA; and (4) violation of the Equal Pay Act

("EPA"), 29 U.S.C. § 206(d).  Am. Compl. ¶ 1.

Plaintiff's EPA claims, Plaintiff's 2001 transfer to the Office of Real Property, Plaintiff's

fully successful 2002-2003 performance evaluation, and Plaintiff's claims involving leave and

employment awards are subject to dismissal on exhaustion grounds.  Plaintiff's other claims are

either not adverse personnel actions or there were legitimate, non-discriminatory reasons for the

actions taken that were not pretext for discrimination or retaliation.  Accordingly, Defendant

moves for dismissal of Plaintiff's complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and (6), or for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) on those claims.

## II.  STATEMENT OF FACTS

Plaintiff, an African American female, over forty years of age, retired from GSA in April 2005.  Amended Complaint ("Am.Compl."), ¶ 4.  During the period alleged in her complaint (2001-2005), Plaintiff worked as a GS-13 Computer Specialist in the GSA's Office of Information Technology, Strategic IT Issues Division and then as a GS-13 Program Specialist in the Office of Real Property.[2]  *See id.* & Exhibit 8, hereto (Plaintiff's resume).  This is Plaintiff's third complaint filed in this Court.[3]

A.  Facts Concerning an Alleged Discriminatory Nonselection - Tokey Bradfield Position

On December 15, 2000, the GSA advertised a Computer Specialist, GS-14 position. Vacancy Announcement No. 010004103 in the Office of Information Technology.  The announcement was made public, and the possible applicant pool was open to all status employees of the GSA in the Washington, D.C. commuting area. Exhibit 1, hereto (Admin. Hearing in EEOC No. 100-2004-00691X, June 6, 2006), pp. 132:17-21; 217:17-218:4; Exhibit 2

---

[2]While assigned to the Office of Real Property, Plaintiff worked as a "full-time union official." Exhibit 3 (Calhoun Dep. Apr. 10, 2008), p. 7:14-16.

[3] Her first complaint was filed in 1995 and alleged retaliation with regard to her performance appraisals.  Calhoun v. Johnson, C.A. 95-2397 (PLF), Docket No. 1; see also id. at Docket No. 55 (order "entering judgment for defendant with respect to plaintiff's retaliation claim regarding her performance evaluation.").  On September 27, 1999, the Court of Appeals affirmed the District Court's judgment.  id. at Docket No. 57.  Her second complaint was filed in 2001. Calhoun v. Brown, et al., C.A. No. 01-1091 (ESH), Docket No. 1.  Plaintiff alleged improper conduct by her union, National Federaltion of Federal Employees ("NFFE") and GSA in the 1998 union elections.  id. at Mem.Op., March 5, 2002, Docket No. 26.

(Wanda Peterson-Parker Dep., Aug. 12, 2005), p. 15:21-16:5.  Plaintiff applied for the position

on the last day of the open period. Exhibit 1 at pp. 40:15-41:3.

Before the last day of the application period, Paul Whitson, the Division Director of the

Office of Information Technology, Strategic IT Issues Division (white male, over 40), met with

Wanda Peterson-Parker, Deputy Director for the Office of Information Technology, Strategic IT

Issues Division (black female, over 40) to discuss Whitson's upcoming vacation and the open

vacancy announcement.  Exhibit 1 (Admin. Hearing), p. 134:4-8.[4]  During the meeting, Whitson

told Peterson-Parker that he believed that one of the employees in the IT Issues Division, Tokey

Bradfield, was the best qualified person for the job.  *id.* at p. 134:11-14.  The only statement

Whitson made to Peterson-Parker concerning the vacancy was, "I think Tokey [Bradfield] is best

qualified for the job."  Exhibit 2 (Wanda Peterson-Parker Dep.), p. 55:8-11.  Whitson never told

Peterson-Parker whether he knew that Ms. Bradfield had applied or that she must choose

Bradfield for the position while he was on vacation.  *Id.*

When Whitson told Peterson-Parker that he thought Bradfield was the most qualified,

there were at least a "couple of" days left in the period during which the vacancy announcement

was open, and not all applications were in.  *Id.* at pp. 16:21-17:6; 134:7-8.  At the time of the

meeting, neither Whitson nor Peterson-Parker knew whether Calhoun had applied.  Exhibit 1

(Admin. Hearing), pp. 193:17-194:3.  In fact, **at the time Whitson told Peterson-Parker that**

**Bradfield was the most qualified, Plaintiff had not yet applied**; she applied on the last day the

vacancy announcement was open. *Id*. at 40:15-41:3.

---

[4] The Administrative Hearing's record erroneously refers to Paul G. Whitson as Paul G.
Woodson.

After the vacancy announcement closed, Patricia Lewis, Human Resources Specialist (black female, over 40), gave Peterson-Parker a referral list of the best qualified candidates, which consisted of three names: Tokey Bradfield, a Korean female, Tisha Boddie, an African-American female, and Plaintiff.  Exhibit 1 (Admin Hearing), p. 143:3-10; *see also* Am. Compl. ¶ 26.  As a personnel specialist, Lewis was qualified to make a recommendation as to which candidate was the best qualified for the position.  Exhibit 1 at 141:4-10.  Based on the resumes of the applicants, Lewis believed that the selectee, Bradfield, was the best qualified for the position due to her computer and information technology experience.  Exhibit 4 (Sworn Statement of Patricia Lewis, Mar. 26, 2004), p. 1.  Furthermore, Lewis believed that the two other applicants on her referral list, Plaintiff and Boddie, were less qualified.  *Id.*

As the Deputy Director, Peterson-Parker made decisions for Whitson in his absence. Exhibit 1 at p.115:6-12; Exhibit 5 (Whitson Aff. 2, Mar. 12, 2004), p. 1-2.  Peterson-Parker selected Tokey Bradfield, a Korean female, for the position.  Exhibit 6 (Merit Promotion Referral).  As Whitson testified, Bradfield had performed work similar to the work required by the announced position in an outstanding manner with minimal guidance.  Exhibit 5 at p. 3. Plaintiff's qualifications for the job were based primarily on education.  *id.*  She did not have the depth of experience that the selectee had. *id.*

On January 2001, Plaintiff filed an EEOC complaint concerning this nonselection. Am. Compl. ¶ 7.  The General Services Administration, Office of Civil Rights (hereinafter "GSA") accepted for investigation only the claims for race and sex discrimination, and not the retaliation claim.  Exhibit 7 (Letter from GSA, Dec. 3, 2003), p. 1.  At the administrative hearing held on June 6, 2006, before Administrative Judge Kurt Hodges, Plaintiff's counsel withdrew the sex

4

discrimination portion of the claim. Exhibit 1 at p. 7:22-8:4. Therefore, the only claim listed in the amended complaint, accepted by the GSA, and not disposed of in the administrative hearing for this non-selection claim is racial discrimination.

Plaintiff is African-American, and the selectee is Asian-American.

B. Facts Concerning the Untimely Allegation of Retaliatory Transfer Claim

In August 2001, Plaintiff transferred from a GS-13 Computer Specialist position within the Office of Information Technology to the position of a GS-13 Program Analyst within the Office of Real Property. *See* Exhibit 8 (Resume of Iona Calhoun), p. 1-2.[5] Nine months later, Plaintiff filed an EEO claim in Case Number EEOC 100-2005-00414x on May 31, 2002, claiming that the August 2001 transfer was retaliation due to her engaging in lawful protected activity. Am. Compl. ¶ 11; *see also* Exhibit 9 (Letter from GSA, Nov. 12, 2002), p. 4.. The GSA dismissed the claim due to "untimely contact with the EEO office." *Id.* Defendant urges the Court to do the same.

C. Facts Relating to Claims of Discriminatory Denial of Training

While she was working in the Office of Real Property, Plaintiff took training courses every year. Exhibit 3 (Calhoun Dep.), p. 122:17-19. In the next eight pages of this brief, Defendant outlines the training opportunities that Plaintiff alleges she was unlawfully denied in 2002 and 2003.[6]

---

[5] Although on page 1 of her Quick Hire resume, Plaintiff indicates that she was in the Office of Real Property Division from August 2001 to Present, on page 2, she records that she was in the Office of Information Technology until August 2003. The August 2003 date is clearly incorrect as she filed her EEO claim concerning the transfer in May of 2002, alleging a discriminatory transfer in August 2001. *See also* Exhibit 9 at p. 4.

[6] Also note that Exhibits 10-17 relate to Plaintiff's claims regarding the denial of training.

As  explained below, Plaintiff was given the same opportunities for training as other employees in the Office of Real Property.  She took those opportunities and requested more.  When her training requests were denied, she sought EEO counseling.

The denial of training as alleged in the complaint does not rise to the level of an adverse employment action.  Moreover, there were legitimate nondiscriminatory/nonretaliatory reasons for the denying the specific training opportunities that were not pretext for discrimination or retaliation.  Nevertheless, Defendant provides the policies of the agency and the lengthy factual background regarding the denials as follows:

The record shows that each employee in the Office of Real Property was entitled to two events per year.  Exhibit 10 (Stanley Langfeld Aff., Apr. 1, 2003), pp. 1-2.  Plaintiff could point to no specific employees at the Office of Real Property who received more than two trainings each year.  Exhibit 3 (Calhoun Dep)., p. 174:22-25.[7]  ORP policy was that the training must be shown to be  "related to the mission of the office and within budgetary constraints."  Exhibit 10 at p. 1.  David Bibb, then the Deputy Associate Administrator of the Office of Real Property, stated:

> The employee could either attend two training courses or a training course and a seminar or conference.  Any combination was acceptable as long as it was within the training budget, did not exceed two (2) courses per year, and job related.  This practice is applied to all employees.

Exhibit 11 (David Bibb Aff. Mar. 4, 2003), pp. 1-2.

---

[7] Even if she could, it should be noted that Plaintiff was in a different job series then those of the other employees in the Office of Real Property.  Therefore, she was not similarly-situated to them. Exhibit 3 (Calhoun Dep.), pp. 51-54.

6

Plaintiff took at least two training courses per year:  Exhibit 3 (Calhoun Dep.), pp. 122:20-123:1.  Plaintiff took the Appraisal Principles course from September 23 to 28, 2002; took the Performance Based Service Contracting course from May 19 to 23, 2003; took a conflict resolution course on August 6, 2003; attended the Blacks in Government Conference in Denver, Colorado from August 24 to 30, 2003; took the Appraisal Procedures course from September 29 to October 4, 2003; attended the Federal Buildings Expo on October 22 and 23, 2003; attended the Retirement and Financial Planning Seminar from January 13 to 15, 2004; attended the FOSE conference to cover "The Digital Edge: E-Government Making a Difference in Our Lives" Session on March 24, 2004; attended the "Driving Performance and Accountability in the Public Sector" seminar on April 24, 2004; and attended the Unisys Symposium on "Delivering the Promise: the Importance of Business Intelligence in Your Customer Relationship Management on June 9, 2004. *See e.g.*, Exhibit 12 (Official Academic Record for Appraisers, Oct. 10, 2002; Business Management Research Associates, Inc. Certificate of Training; Email from Langfeld to Calhoun, July 29, 2003; Email from Langfeld to Langfeld, Sept. 22, 2003; Email from Langfeld to Calhoun, Nov. 14, 2003; Email from Langfeld to Calhoun, Apr. 4, 2003; Email from Langfeld to Calhoun, Dec. 8, 2003; Email from Langfeld to Calhoun, Mar. 22, 2004; Email from Langfeld to Calhoun, Apr. 20, 2004; Email from Langfeld to Calhoun, June 7, 2004).

1.  <u>2002 Denied Training</u>[8]

a.  <u>Government and Media Perception Seminar</u>

In April 2002, Langfeld denied Plaintiff's request to attend the Government and Media

Perception Seminar.  Am. Compl. ¶ 16.  Plaintiff admitted that "[t]he seminar is geared toward

teaching attendees marketing techniques to enhance their agency's programs."  Exhibit 13

(Calhoun Aff., Mar. 13, 2003), p. 8.  Langfeld denied Plaintiff's request because the training was

not related to real property.  *Id.*; Exhibit 10 (Langfeld Aff.), p. 4.

b.  <u>Armed Forces Communications and Electronics Association Luncheon</u>

On April 16, 2002, Plaintiff emailed her team leader, John Thomas, to request to attend

the Armed Forces Communications and Electronics Association's luncheon.  Exhibit 14 (Email

from Calhoun to Thomas, Apr. 16, 2002).  In her email, Plaintiff attached the description of the

event, which stated that the speaker would be presenting on "Expanded Electronic Government

and Other IT Initiatives."  *Id.*  Thomas denied her request because the luncheon did not "directly

relate to the work of the Office of Real Property."  *Id. (*Email from Thomas to Calhoun, Apr. 16,

2002).  On April 24, 2002, Langfeld concurred with Thomas's judgment and denied Plaintiff's

request to attend the Armed Forces Communications and Electronics Association luncheon.

Exhibit 10 (Langfeld Aff.), p. 3; *see also* Am. Compl. ¶ 16.

c.  <u>Smart Card Meeting</u>

On April 30, 2002, Plaintiff emailed Thomas and requested to attend a Smart Card

---

[8] Plaintiff's amended complaint states that Plaintiff was denied a request to attend a Human
Resources Workshop in March 2002.  Am. Compl. ¶ 16.  However, there is no evidence in the
record that this claim was ever accepted by the GSA and Plaintiff can point to none in support of
this averment.

meeting so she could "keep abreast of IT and future plans for the use of the [S]mart [C]ard."

Exhibit 14 (Email from Calhoun to Thomas, Apr. 30, 2002).  Thomas reviewed the meeting

agenda and notes from the March 2002 Smart Card meeting and denied Plaintiff's request to

attend the May meeting because the "topics discussed at the Smart Card meeting" do not

"significantly relate to Real Property Policy Division initiatives."  *Id.* (Email from Thomas to

Calhoun, May 1, 2002).  In his email, Thomas suggested that Plaintiff take a course related to

real property, and he provided Plaintiff the title, description, and website of an alternate class

that would relate to real property.  *Id.*

After Thomas denied her request, on May 3, 2002, Plaintiff emailed Langfeld and

requested to attend the Smart Card meeting "as the duly elected President, Local 1705, GSA

Central Office, to keep abreast of IT changes being made to the workplace, and how these

issues/changes can impact the bargaining unit employees.  *Id.* (Email from Calhoun to Langfeld,

May 3, 2002).  However, after consulting with Human Resources staff, Langfeld was unable to

grant Plaintiff's request to attend the Smart Card meeting as a union representative because "the

meeting does not fall within the authorized activities in which the use of official time may be

used as listed under Article 6, Section 3, of the National Agreement Between GSA and NFFE

[the union]."  *Id.* (Email from Langfeld to Calhoun, May 9, 2002).

### d.  E-Authentication Policy and Technology Forum

On November 18, 2002, Plaintiff emailed Langfeld requesting to attend the E-

Authentication Policy and Technology Forum held on November 21, 2002.  Exhibit 14 (Email

from Calhoun to Langfeld, Nov. 18, 2002).  In her email, Plaintiff states: "FYI, this forum does

not contain discussions of real property management information."  *Id.*  Langfeld denied

Plaintiff's request to attend the forum because, as Plaintiff admitted, "the topics covered in this meeting do not in any way relate to our program in the Office of Real Property." Exhibit 14 (Email from Langfeld to Calhoun, Nov. 19, 2002).

e. Plaintiff's Claims Related to the 2002 Training Requests

On May 31, 2002, Plaintiff filed an EEO claim in Case Number EEOC 100-2004-00302X, claiming discrimination on April 15, 2002, April 24, 2002, and May 5, 2002, based on race, sex, color, equal pay, and retaliation due to being denied permission to attend three trainings (Government and Media Perception Seminar, Armed Forces Communications and Electronics Association luncheon, and Smart Card meeting). Am. Compl. ¶ 8. GSA accepted for investigation only the discrimination claims for race, sex, and reprisal, and not the color discrimination or equal pay claims. Exhibit 9 (Letter from GSA, Nov. 12, 2002), p. 1; Exhibit 15 (Letter from GSA, Mar. 7, 2003), p. 1. Plaintiff's amended complaint alleges that every employment action taken by Defendant was motivated by discrimination based on race, gender, age, and reprisal. Am. Compl. ¶ 37, 44, 60, 75. Therefore, the only claims listed in the amended complaint and accepted by GSA for those three events are discrimination based on race, sex, and retaliation.

On March 7, 2003, after receiving an email from Plaintiff alleging discrimination based on reprisal for being denied a training on November 21, 2002 (E-Authentication Policy and Technology Forum), GSA added this fourth claim of discrimination to the case.[9] Exhibit 15

---

[9] Plaintiff's amended complaint states that Plaintiff filed an EEO claim on May 31, 2002, that alleged discrimination "based on race, gender, color, equal pay, and reprisal in the areas of being denied *four* requests for training..." Am. Compl. ¶ 8 (emphasis added). However, there is no evidence on the record that Plaintiff filed an EEO complaint on May 31, 2002, that consisted of four discrimination claims for being denied training. *See* ROI Case No. 02COMPRIC-1, p. 1-2.

(Letter from EEOC, Mar. 7, 2003), p. 1.  The only claim listed in the amended complaint and accepted by GSA for the denial to attend the E-Authentication Policy and Technology Forum is discrimination based on reprisal.

    2.  2003 Denied Training

       a.  FOSE Expo (Information Technology Tradeshow)

On February 25, 2003, Plaintiff emailed Langfeld requesting to attend the FOSE Expo (Information Technology Tradeshow) held on April 8, 2003.  Exhibit 14 (Email from Calhoun to Langfeld, Feb. 25, 2003, 11:54AM).  Langfeld denied Plaintiff's request to attend because "the Real Property Policy Division has neither current nor planned IT initiatives that would relate to the FOSE Expo."  *Id.* (Email from Langfeld to Calhoun, Feb. 25, 2003), 12:26PM.

       b.  E-Gov's Knowledge Management 2003 Conference

On March 7, 2003, Plaintiff emailed Thomas requesting to attend the E-Gov's Knowledge Management 2003 Conference. Exhibit 14 (Email from Calhoun to Thomas, Mar. 7, 2003).  After reviewing the agenda for the conference, Thomas denied Plaintiff's request to attend the conference because the discussion topics did not relate to Real Property Policy Division initiatives.  *Id.*  (Email from Thomas to Calhoun, Mar. 10, 2003).   In his email, Thomas suggested that Plaintiff take a course related to real property, and he provided Plaintiff the title and website of four alternate course that would relate to work in the Real Property Policy Division.  *Id.*

       c.  Uniform Standards of Professional Appraisal Practice (USPAP) Course

On October 6, 2003, Plaintiff requested to take the Uniform Standards of Professional Appraisal Practice (USPAP) Course 410.  Exhibit 14 (Email from Calhoun to Langfeld, Oct. 7,

11

2003). The course Plaintiff requested was the third in the series. Exhibit 3 (Calhoun Dep.). p.

56:23-57:2. Plaintiff had already taken two previous appraisal courses, *id.* at 55:25-56:4, and she

failed the second course in the series. *Id.* at 56:23-57:2. Plaintiff never repeated the course that

she failed. *Id.* at 57:3-6. Langfeld denied Plaintiff's request because Plaintiff had already

completed two training opportunities for the fiscal year and because the third course in the series

was designed for people with their own appraisal businesses, which was inapplicable to

Plaintiff's situation. Exhibit 14 (Email from Langfeld to Calhoun, Oct. 7, 2003); *see also*

Exhibit 3 (Calhoun Dep.), 56:7-9.

### d. Building Owners and Managers Association (BOMA) Conference

On October 7, 2003, Plaintiff requested to attend the Building Owners and Managers

Association ("BOMA") Conference. Exhibit 14 (Email from Calhoun to Langfeld, Oct. 7,

2003). Langfeld denied Plaintiff's request on October 20, 2003 because the office only sends

two people to the annual conference, and those two people had already been chosen at the time

of Plaintiff's request. *Id.* (Email from Langfeld to Calhoun, Oct. 20, 2003). Langfeld also

reiterated to Plaintiff that Plaintiff had already had her allotted two training courses for that fiscal

year. *Id.*

### e. Plaintiff's Claims Related to the 2003 Training Requests

On March 3, 2003, GSA amended Plaintiff's complaint in Case Number EEOC 100-

2004-00302X to include a claim for discrimination based on reprisal (prior EEO activity) for the

denial of Plaintiff's request to attend the FOSE Expo (Information Technology Tradeshow).

Exhibit 16 (Letter from GSA, Mar. 3, 2003). However, GSA accepted for investigation only the

discrimination claim based on reprisal. *Id.* Therefore, the only claim listed in the amended

complaint and accepted by GSA for the denial of attendance at the FOSE Expo is discrimination based on reprisal.

On March 12, 2003, GSA further amended Case Number EEOC 100-2004-00302X to include a claim for discrimination based on race, sex, and reprisal (prior EEO activity) for the denial of Plaintiff's request to attend the E-Gov's Knowledge Management 2003 Conference. Exhibit 17 (Letter from GSA, Mar. 12, 2003). The three claims accepted by GSA and listed in the amended complaint are discrimination based on race, sex, and reprisal.

On March 12, 2004,[10] Plaintiff filed another EEO claim in Case Number EEOC 570-2006-00088x alleging discrimination based on race, color, sex, age, equal pay, and reprisal for being refused attendance at the USPAP and BOMA events, occurring on October 7, 2003, and October 20, 2003, respectively. Exhibit 18 (Formal Compl. of Discrimination, Mar. 12, 2004). GSA accepted for investigation only the claims of discrimination based on race, sex, and reprisal. Plaintiff's amended complaint alleges that every employment action taken by Defendant was motivated by discrimination based on race, gender, age, and reprisal. Am. Compl. ¶ 37, 44, 60, 75. Therefore, the only claims listed in the amended complaint and accepted by GSA for denial of attendance at those two events are discrimination based on race, sex, and retaliation.

D. Facts Relating to Alleged Discriminatory Fully Successful Performance Reviews

The record is replete with examples of Plaintiff's performance failures while working for

---

[10] Plaintiff's amended complaint states that this claim was filed with GSA on July 9, 2004. Am. Compl. ¶ 12. However, Plaintiff's EEO complaint for a denial of training on October 7, 2003, denial of attendance at the BOMA conference on October 20, 2003, and non-selection for a promotion under Vacancy Announcement #03008903MP is dated March 12, 2004. *See* Exhibit 18 (Formal Compl. of Discrimination, Mar. 12, 2004).

the Office of Real Property.  For instance, Plaintiff frequently failed to complete reports before submitting them to her supervisor and "made numerous errors" on those reports that "had to be corrected by her team leader."  Exhibit 20 (Employee Performance Review and Rating, Oct. 1, 2001-Sept. 30, 2002).  On at least two occasions, her supervisors told Plaintiff that her reports were incorrect.  Exhibit 3 (Calhoun Dep.), p. 97:8-11.  Even after being reminded of scheduled meetings, Plaintiff either was late to or completely missed multiple meetings, where her attendance was both essential and required.  *See, e.g.*, Exhibit 21 (Email from Langfeld to Calhoun, May 28, 2003; Email from Langfeld to Calhoun, Mar. 13, 2003; Email from Langfeld to Calhoun, Nov. 16, 2001; Email from Langfeld to Calhoun Jan. 21, 2003).  At least one or two times, Plaintiff admitted that she did not tell her team that she would be late to meetings.  Exhibit 3 (Calhoun Dep.), p. 95:19-24.   She failed to pass the Appraisal procedure training course *Id.* at 56:19-57:6.

In addition, Plaintiff did things that no employee in the Office of Real Property was permitted to do.  Employees in the Office of Real Property are allowed to attend two training courses or conferences each year, and they must relate to the mission of the office and be within budgetary constraints.  Exhibit 3 (Calhoun Dep.), p. 174:14-15; *see also* Exhibit 10 (Stanley Langfeld Aff), p.. 1; Exhibit 11 (David Bibb Aff.), pp. 1-2.  Even after being expressly prohibited by her supervisor to attend a training course, Plaintiff went anyway.  Exhibit 22 (Reprimand, Mar. 8, 2002).  When her supervisor instructed her to return to her workstation, Plaintiff initially agreed to do so, but actually remained in the training.  *Id.*  Regarding another instance of inappropriate behavior, although her supervisor expressly prohibited her from renting a car "to see Denver and parts of Colorado after training hours," Exhibit 23 (Email from

14

Langfeld to Calhoun, May 1, 2003; *see also* Email from Calhoun to Langfeld, May 1, 2003), Plaintiff ignored her supervisor's orders, rented a car, and submitted the expense report for the car to the Office of Real Property. *Id.* (Email from Calhoun to Langfeld, Sept. 2, 2003).

On October 7, 2003, Langfeld rated Plaintiff as "Successful," the highest possible rating, on her Employee Performance Review and Rating for the period of October 1, 2002, to September 30, 2003. Exhibit 24 (Employee Review and Rating, p. 1, Oct. 7, 2003). Langfeld rated Plaintiff "Successful," on each of the four "Critical Elements." *Id.* Langfeld provided Plaintiff with positive feedback and suggestions for future improvement in the designated comment areas. *Id.* at 1-2. Likewise, Langfeld also gave Plaintiff a fully successful review with suggestions for future improvement on Plaintiff's Employee Performance Review and Rating for the period of October 1, 2001 to September 30, 2002. Exhibit 20 (Employee Review and Rating, p. 1, Oct. 11, 2002). Furthermore, Plaintiff's amended complaint admits: "Plaintiff had successful work performance ratings the two years prior to her transfer under Langfeld [prior to August 2001; *see* Am. Compl. ¶ 11], and/or her application to this [June 2004; *see* Am. Compl. ¶ 22] vacancy announcement." Am. Compl. ¶ 23.

Performance ratings at the GSA are not tied to cash awards. Exhibit 19 (Declaration of Lena Fant, Director of Employee Relations, GSA). In any event, Plaintiff, along with everyone else in her division, was granted monetary awards because she was new to the division and her supervisor wanted to encourage her to do better work. Exhibit 25 (Langfeld Aff., Apr. 29, 2003), p. 6.

Plaintiff's amended complaint claims discrimination on "negative employment evaluations for the reporting period October 1, 2002 to September 30, 2003." Am. Compl. ¶ 8.

15

However, there is no indication in the record that Plaintiff filed EEO claims concerning either

multiple performance evaluations or an evaluation for the October 1, 2002 to September 30,

2003 reporting period.

On February 25, 2003, Plaintiff amended her EEO complaint of discrimination to include

a claim for discrimination for the annual performance review rating she received from Langfeld

for the period of October 1, 2001 through September 30, 2002.  Formal Compl. of

Discrimination, Feb. 25, 2003.

E.  Non-Selection: Holstrom

From July 28, 2003 to August 8, 2003, the Office of Real Property advertised for a

Program Expert, GS-14 position under Vacancy Announcement 030008903MP. Exhibit 27

(Vacancy Announcement 030008903MP).  Langfeld selected Kenneth Holstrom, a white male

with unknown prior EEO activity, for the position due to his extensive real estate experience.

Exhibit 28 (Langfeld Aff. 3, June 15, 2004).  Langfeld "selected the best qualified candidate

based on their experience in Government real estate, and their knowledge, skills, and abilities

related to Government real estate."  *Id.*  Holstrom had twenty-nine years of real property

experience, whereas Plaintiff only had less than three years of real property experience.  *Id.; see*

*also* Exhibit 8.

On March 12, 2004, Plaintiff filed an EEO claim in Case Number EEOC 570-2006-

00088x alleging discrimination based on race, color, sex, age, equal pay, and reprisal for not

being selected for a job under Vacancy Announcment 030008903MP.  Exhibit 18 ((Formal

Compl. of Discrimination, Mar. 12, 2004).   Plaintiff's amended complaint alleges that every

employment action taken by Defendant was motivated by discrimination based on race, gender,

16

age, and reprisal.  Am. Compl. ¶ 37, 44, 60, 75.

F.  Non-Selections: Burmeister and McDonald

From February 25, 2004, to March 9, 2004, the Office of Real Property advertised for a

Program Expert, GS-14 position under Vacancy Announcement #040019503MP.  Exhibit 29

(Vacancy Announcement #040019503MP).  Twenty candidates applied for the job, QuickHire

Staging Area Applicant Listing, Mar. 10, 2004, and five were selected to be on the Best

Qualified list.  Exhibit 30 (GSA Merit Promotion Referral, Mar. 12, 2004).  Langfeld selected

Robert Burmeister, a white male with no prior EEO activity, for the position.  *Id.*  Langfeld

"rated and evaluated the candidates based on the depth of their real property experience and the

number of years of experience."  Exhibit 31 (Langfeld Aff., Dec. 13, 2004) at p. 2.  At the time

she applied for the position, Plaintiff only had approximately three years of real property

experience.  Exhibit 3 (Calhoun Dep.), p. 87:16-18.  Burmeister had over twenty years in private

and public real estate experience.  Exhibit 32 (Applicant Resume Detail: Robert J. Burmeister),

p. 1.  Mr. Langfeld found Mr. Burmeister's abilities "far superior" to those of the other

candidates.  Exhibit 31 at p. 2.  Burmeister ultimately turned down the job.  *Id.*  Langfeld then

cancelled Vacancy Announcment #040019503MP "because the remaining candidate pool did not

have the real property experience that [he] was seeking."  *Id.*; *see also*  Exhibits 8 & 38

(Plaintiff's application submission).

From May 18, 2004, to June 2, 2004, the Office of Real Property re-advertised for a

Program Expert, GS-14 position under Vacancy Announcement #040035103MP.  Exhibit 33

(Vacancy Announcement #040035103MP).  This new vacancy announcement was not

significantly different from Vacancy Announcement #040019503MP.  Exhibit 29; *see also*

17

Exhibit 31 at 2.  Out of the eighteen applicants, Virginia McDonald's application earned the highest rating at 99.77.  Exhibit 34 (QuickHire Staging Area Applicant Listing, June 3, 2004).  Plaintiff earned a 91.11, seven slots below McDonald.  *Id.*  McDonald had twenty-two years of real estate experience.  Exhibit 31 (Langfeld Aff.) at p. 3; *see also* Exhibit 38A (McDonald's application submission).  In comparison to Burmeister and McDonald, Plaintiff was clearly less qualified for the job because she only had three years of real property experience.  *Id.* at 4.  Due to her experience in real estate, Langfeld selected McDonald. *Id.* at 3.

On August 2, 2004, Plaintiff filed an EEO claim in Case Number EEOC 100-2005-00414x, claiming discrimination based on race, color, sex, equal pay, age, and reprisal when she was not selected for a Program Expert, GS-14 position that was announced under Vacancy Announcement #040019503MP.  Am Compl. ¶ 9; *see also* Exhibit 35 (Formal Compl. of Discrimination, Aug. 2, 2004).  However, GSA accepted for investigation only the claims for discrimination based on race, color, sex, age, and reprisal, and not the equal pay claim.  Exhibit 36 (Letter from EEOC, Aug. 19, 2004).  On August 23, 2004, GSA amended Plaintiff's EEO complaint to include a claim of discrimination based on reprisal when Plaintiff was not selected for a Program Expert, GS-14 position announced under Vacancy Announcement #040035103MP.  Exhibit 37 (Letter from GSA, Aug. 23, 2004).   The claims listed in the amended complaint and accepted by the GSA for investigation for these two non-selections are claims of discrimination based on race, color, sex, age, and reprisal.

18

### III.  LEGAL STANDARDS AND DEFENSES

A.  Appropriateness of a Dismissal, or in the Alternative, for Summary Judgment.

Under Fed. R. Civ. P. 12 (b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, the Plaintiff bears the burden of establishing the Court's jurisdiction.  *See Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).   In determining whether jurisdiction exists, the Court is to regard the allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the motion to one for summary judgment.  *Alliance for Democracy v. Fed. Election Comm'n*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).

Under Fed R. Civ. P. 12(b)(6), the court can dismiss a complaint for "failure to state a claim upon which relief can be granted."  The plaintiff's factual allegations must be accepted as true when reviewing the adequacy of the complaint pursuant to Fed. R. Civ. 12(b)(6).  *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).  However, factual allegations "must be enough to raise a right to relief above the speculative level," and that a plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief.'"  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  "If on a motion under 12(b)(6)...matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. (12)(d).

Under Fed. R. Civ. P. 56(c), a court must enter summary judgment when "there is no genuine dispute as to any material fact" and the "moving party is entitled to judgment as a matter of law."  Summary judgment is proper when the nonmoving party fails to establish the existence of an essential element to his case and for which he will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).    Specific material evidentiary facts, not

unsupported speculation, must be shown to overcome summary judgment.  *Ash v. United Parcel*

*Services, Inc.*, 800 F.2d. 409, 411-12 (4th Cir. 1986); *Aka v. Washington Hosp. Ctr.*, 156 F.3d

1284, 1288 (D.C. Cir. 1998); *see also Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)

(plaintiff "must support his allegations . . . with facts in the record; a mere unsubstantiated

allegation . . . creates no genuine issue of fact and will not withstand summary judgment.").

Once the moving party presents a properly supported motion, the non-moving party must go

beyond the pleadings to identify evidence that would allow a reasonable jury to find for the non-

moving party.  Any inferences drawn in favor of the non-moving party must be reasonable, and

the non-moving party defeats a motion for summary judgment only by responding with some

factual showing that creates a genuine issue of material fact.  *Harding*, 9 F.3d at 154.

    B.  <u>Standard for Establishing Discrimination based on Race, Color, Sex, and Age.</u>

    In an Age Discrimination in Employment Act ("ADEA") (age) case and a Title VII case

(race and sex), the applicable analytical framework is the three-stage, burden-shifting test set

forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  Under this

test, the plaintiff must initially prove by a preponderance of the evidence a *prima facie* case of

unlawful discrimination.  If the plaintiff makes this showing, the burden shifts to the employer to

articulate a legitimate, non-discriminatory reason for its actions.  If the employer makes this

showing, the burden then returns to the plaintiff to show that the employer's reason is pretextual.

*Short v. Chertoff*, 355 F.Supp.2d 166, 171, 2008 WL 2174856 *3 (D.D.C. May 27, 2008)) (*citing*

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also id.* at *172

(*citing Brady v. Office of the Sergeant at Arms, U.S. House of Representatives,* 520 F.3d 490,

494 (D.C.Cir. 2008)).  In an age, race, color, and sex discrimination case, the ultimate burden of persuasion remains at all times on the plaintiff to prove that the employer intentionally discriminated against her.  *Id.* (*citing Burdine*, 450 U.S. at 252-3).

In *Fogg v. Gonzales*, 492 F.3d 447 (D.C. Cir. 2007), the D.C. Circuit held, *inter alia*, that the 1991 amendments to Title VII codified two alternative ways of establishing liability for intentional discrimination: (1) a single motive theory requiring that the plaintiff establish that discrimination was the "sole" or "but for" reason for the challenged employment action; and (2) a "mixed-motive" theory requiring only that the plaintiff demonstrate that discrimination played a "motivating part" or was a "substantial factor" in the employment decision.  *Id.* at 451.  Under either theory, plaintiff must demonstrate discrimination by a preponderance of the evidence and may rely on direct or circumstantial evidence to meet that burden.  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-102 (2003).

In the absence of direct evidence, Plaintiff may attempt to establish that she was the victim of intentional discrimination on the basis of her race by relying on circumstantial evidence analyzed using the scheme first set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that scheme, the plaintiff must first, by a preponderance of the evidence, establish a prima facie case of discrimination.  *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).  In order to establish a *prima facie* case for discrimination, the employee must establish that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).  If the employee succeeds, the employer then must introduce evidence of a legitimate, nondiscriminatory reason for its action.  *See McDonnell*

21

*Douglas*, 411 U.S. at 802; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,

142 (2000) (explaining that the defendant's "burden is one of production, not persuasion").

Once it is established that both parties have met their respective burdens of production (*i.e.*,

plaintiff by presenting a *prima facie* case and defendant by producing a non-discriminatory

reason for its actions), the burden shifting scheme becomes irrelevant.  *Hicks*, 509 U.S. at 510.

Then, the plaintiff must establish, by a preponderance of the evidence, that "race, color, religion,

sex, or national origin was a motivating factor for any employment practice." *Desert Palace,*

539 U.S. at 101 (2003) (citing 42 U.S.C. § 2000e-2(m)).

Alternatively, plaintiff can meet the ultimate burden by demonstrating that the

defendant's legitimate, non-discriminatory reason is a pretext and that discrimination is the "but

for" reason for the challenged employment action.  *Hicks,* 509 U.S. at 515-518.  This a more

difficult standard than the requirement under Section 2000e-2(m) to show that discrimination

was a motivating factor.   In the single motive case, in *Reeves v. Sanderson Plumbing Products,*

*Inc.*, 530 U.S. 133, 148 (2000), Justice O'Connor recognized occasions where summary

judgment would be appropriate:

> Certainly there will be instances where, although the plaintiff has established a prima
> facie case and set forth sufficient evidence to reject the defendant's explanation, no
> rational factfinder could conclude that the action was discriminatory.  For instance, an
> employer would be entitled to judgment as a matter of law if the record conclusively
> revealed some other, nondiscriminatory reason for the employer's decision, or if the
> plaintiff created only a weak issue of fact as to whether the employer's reason was untrue
> and there was abundant and uncontroverted independent evidence that no discrimination
> had occurred.

Regardless of which standard is employed, Plaintiff fails to meet her burden of coming

forward with evidence to create a triable issue.  As demonstrated below, the undisputed facts

illustrate that Plaintiff cannot demonstrate that discrimination was a motivating factor, much less that it was the sole motivating factor in the challenged decision.

Had the Plaintiff made a *prima facie* case of discrimination, it would fall to the defendant to articulate a legitimate non-discriminatory reason for its behavior. Once an employer successfully presents a legitimate, non-discriminatory reason for its actions, "the *McDonnell Douglas* framework-with its presumptions and burdens-disappears, and the sole remaining issue is discrimination *vel non*." *Short*, 555 F.Supp.2d at 172 (*citing Brady v. Office of the Sergeant at Arms*, *U.S. House of Representatives*, 520 F.3d at 494) (noting that "the prima facie case is a largely unnecessary sideshow." (emphasis in text))). To survive summary judgment, a plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was the product of discrimination. *Holcomb v. Powell*, 433 F.3d 889, 896-897 (D.C. Cir. 2006); *Brown v. Brody*, 199 F.3d 446, 458-59 (D.C. Cir. 1999) ("Courts are not free to second-guess an employer's business judgment, a plaintiff's mere speculations are insufficient to create a genuine issue of fact regarding an employer's articulated reasons for its decisions and avoid summary judgment.") There is no evidence to suggest that a supervisor's treatment of Plaintiff was pretext for discrimination rather than a reflection of reality.

C. Standard for a Retaliation Claim.

To prevail on a retaliation claim, a plaintiff must follow the *McDonnell Douglas* framework. *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003). As noted above, plaintiff must first set forth evidence of a *prima facie* case of retaliation.

To establish a *prima facie* case of retaliation, "the plaintiff must present evidence that (1) she engaged in protected activity; (2) the employer took a material adverse action against her;

23

and (3) the adverse action was causally related to the exercise of his rights." *Moses v. Howard University Hosp.*, 2007 WL 442218, *5 (D.D.C. 2007) (*citing Holcomb v. Powell,* 433 F.3d 889, 901-02 (D.C.Cir. 2006); *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C.Cir. 2006)). Under these directives, a plaintiff must demonstrate that the employer's challenged action would dissuade a "*reasonable* employee" from going to the agency's EEO office, either to lodge a complaint or seek help in resolving an allegation of discriminatory or retaliatory treatment. *See Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2411-12, 2415 (2006). Title VII does not seek to set a mere "civility code for the American workplace," *Id.* at 2415. Rather, proof of injury is required.

Once an employee satisfies the three elements of a *prima facie* case, it "raises a 'rebuttable presumption of unlawful discrimination,'" shifting the burden to the defendant to rebut such presumption. *Id.* (*citing Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C.Cir.2005) and *Jones v. Wash. Metro. Area Transit Auth.*, 205 F.3d 428, 433 (D.C.Cir.2000)); *see also Baloch v. Norton*, 517 F. Supp. 2d 345, 353 (D.D.C. 2007) (*citing Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) *(quoting McDonnell Douglas v. Green, supra*).

Defendant must then articulate legitimate non-discriminatory reasons for its actions. Plaintiff then has the burden of proving that Defendant's actions were taken for reasons other than those offered, but instead, for a retaliatory purpose. *Moses v. Howard University Hosp.*, 474 F.Supp. 2d 117 (D.D.C. 2007).

D.  Standard for an Equal Pay Act Claim.

The Equal Pay Act bars employers from discriminating

> between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by the quantity or quality of production; or (iv) a differential based on any other factor than sex.

29 U.S.C. § 206(d)(1).  "To establish a violation of the Equal Pay Act, a plaintiff must demonstrate that 'the employer paid male and female employees different wages for substantially equal work.'"  *Turner v. District of Columbia*, 383 F.Supp. 2d 157, 179 (D.D.C. 2005) (quoting *Broadus v. O.K. Industries, Inc.*, 226 F.3d 937, 941 (8th Cir. 2000)).  The EPA "'does not apply...where the plaintiff is performing comparable (but not substantially equal) work...'"  *Id.* (quoting *Gunther v. County of Wash.*, 623 F.2d 1303, 1311 (9th Cir. 1979).  The EPA also provides four affirmative defenses, which "authorize employers to differentiate in pay on the basis of seniority, merit, quantity or quality of production, or any other factor other than sex, even though such differentiation might otherwise violate the Act."  *County of Wash. v. Gunther*, 452 U.S. 161, 169 (1981).  "Under the Equal Pay Act, the courts and administrative agencies are not permitted to 'substitute their judgment for the judgment of the employer...who has established and applied a bona fide job rating system,' so long as it does not discriminate on the basis of sex."  *Id.* at 171 (quoting 109 Cong. Rec. 9209 (1963)).

The Equal Pay Act, contained in its entirety at 29 U.S.C. § 206(d), does not include any jurisdictional grant.  Absent any other grant of jurisdiction, a Court's jurisdiction over lawsuits

25

against the federal government depends on the Tucker Act, 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1491(a)(1).  28 U.S.C. § 1346(a)(2), commonly referred to as the Little Tucker Act, expressly limits the jurisdiction of this Court under the statute to any non-tort "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress."  *See e.g., Doe v. Dep't of Justice*, 753 F.2d 1092, 1101 (D.C. Cir. 1985).

Every Court that has considered this issue has concluded that the Federal Court of Claims has exclusive jurisdiction over Equal Pay Act claims exceeding $10,000.  *Barnes v. Levitt*, 118 F.3d 404, 410 (5th Circuit 1997) ("Under the Tucker Act, 28 U.S.C. § 1491, a plaintiff asserting an Equal Pay Act cause of action must bring that action in the Court of Federal Claims if the claim, including the fees sought, exceeds $10,000."); *Huddleston v. Donovan*, 524 F. Supp. 179 (N.D. Ill. 1981) (same); Warren *v. Alexander*, 1979 WL 15358, 21 F.E.P. 664 (N.D. Ga 1979) (same).  Consequently, Equal Pay Act cases must be brought in either the Court of Federal Claims or in the federal district where the Plaintiff resides.  *Parker v. King*, 935 F.2d 1174, 1178 (11th Cir. 1991); *Brooks v. Weinberger,* 637 F. Supp. 22 (D.D.C. 1986).

Because Plaintiff seeks damages for her Equal Pay Act claim in excess of $10,000, this Court lacks jurisdiction over her claims.  The Court thus should grant Defendant summary judgment on this claim.

> E.  Exhaustion of Administration Remedies.

In actions brought under Title VII, a court may properly consider only those claims that are (1) contained in the plaintiff's administrative complaint or claims that are "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff has

exhausted administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir 1995); *Johnson v. Gonzales*, 474 F.Supp.2d 55, 58 (D.D.C. 2007); *Jones v. Greenspan*, 402 F. Supp. 2d 294, 297 (D.D.C. 2005).[11]

Dismissal also is the proper result when a plaintiff fails to exhaust administrative remedies for claims brought under the ADEA. *More v. Snow*, 480 F.Supp.2d 257, 269 (D.D.C. 2007); *Rann v. Chao*, 346 F. 3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Johnson v. Gonzales*, 479 F.Supp.2d at 58.

---

[11] There exists substantial uncertainty within this District regarding whether a failure to properly exhaust administrative remedies is correctly brought in a Rule 12(b)(1) motion, as a jurisdictional defect, or in a 12(b)(6) motion. *Compare Mills v. Billington*, Civ. A. No 04-2205 (HHK), 2006 WL 1371683, at *2 (D.D.C. May 16, 2006) ("It is well-settled that a plaintiff's failure to exhaust her administrative remedies will deprive a district court of subject matter jurisdiction[.]"); *Williams v. Chertoff*, Civ. A. No. 05-0211 (RCL), 2005 WL 3200794, at *1 (D.D.C. Nov. 1, 2005) (same); *Johnson v. Mukasey*, 248 F.R.D. 347, 353-54 (D.D.C. Mar. 20, 2008) (Urbina, J.) (same); with *Holmes v. PHI Serv. Co.*, 437 F. Supp. 2d. 110, 118-23 (D.D.C. 2006) (Walton, J.) (failure to timely exhaust is not a jurisdictional defect); *Walker v. Paulson*, Civ. A. No. 06-1115 (PLF), 2007 WL 1655879, at * 2 (D.D.C. June 7, 2007) (same); *Hewitt v. Rice*, --- F. Supp. 2d ---, 2008 WL 2428219, at *2, n.2 (D.D.C. Jun. 17, 2008) (Roberts, J.) (same); *Hayes v. Chao*, 541 F. Supp. 2d 387, 392 (D.D.C. Apr. 2, 2008) (Kollar-Kotelly, J.) (not jurisdictional in nature, but a "statutory condition precedent to the instigation of litigation"); *see also Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (recognizing that prior D.C. Cir. decisions have reached conflicting answers as to whether a failure to exhaust is jurisdictional, but declining to decide the matter); *Mianegaz v. Hyatt Corp.*, 319 F. Supp. 2d 13, 17 (D.D.C. 2004) (Urbina, J.) (same); *Marcelus v. Corr. Corp. of Am. / Corr. Treatment Facility*, 540 F. Supp. 2d 231, n.4 (D.D.C. Mar. 31, 2008) (Leon, J.) (noting that "courts in this district continue to grapple with the appropriate standard for failure to exhaust," noting inconsistencies among courts in the D.C. Circuit).

Much like in *Rann*, the distinction for purposes of this Motion is academic as dismissal is appropriate under either Rule 12(b)(1) or Rule 12(b)(6). Defendant here cites the Rule 12(b)(1) standard as he understands this Court considers a failure to exhaust not to be a jurisdictional defect. *See Mills v. Billington*, <u>supra</u>.

Pursuant to regulations promulgated by the EEOC, a federal employee who believes he or she may have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must begin the administrative EEO process by contacting an agency EEO counselor within forty-five days of the matter alleged to be discriminatory.  29 C.F.R. § 1614.105(a)(1) (2004); *Bowden v. U.S.*, 106 F. 3d 433, 437 (D.C. Cir. 1997); *Seigal v. Kreps*, 654 F. 2d 773, 776 (D.C. Cir. 1981).[12]

If an employee does not contact an EEO counselor within the 45 day requirement, he or she will not ordinarily be permitted to maintain an action in federal court on that claim.  *See Brown v. Marsh*, 777 F. 2d 8, 13 (D.C. Cir. 1985); *Miller v. Smith*, 603 F. Supp. 1244, 1246 (D.D.C. 1985).  A plaintiff that fails to comply with the 45-day requirement bears the burden of pleading and proving reasons sufficient to excuse non-compliance with the deadline.  *Bayer v. U.S. Dept of Treasury*, 956 F. 2d 330, 332-33 (D.C. Cir. 1992); *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982).

Unlike under Title VII and the ADEA, the Equal Pay Act "provides for immediate judicial review of claims for equal pay," and a court cannot dismiss an EPA claim due to failure to exhaust administrative remedies.  *Ososky v. Wick*, 704 F.2d 1264, 1265 (D.C. Cir. 1983).  However, "the Equal Pay Act bars any action not filed within two years after a cause of action accrues, and allows three years if the offending conduct was willful."  *Turner*, 383 F.Supp. 2d at 179 (citing 29 U.S.C. § 255).

---

[12] Although there is an alternative method to exhaust an age discrimination case [*see Stevens v. United States Department of Treasury*, 500 U.S. 1, 5 (1991)], in this case, Plaintiff has presented no evidence that she pursued that alternative route.

IV.  <u>ARGUMENT</u>

In this section, Defendant sets forth as succinctly as possible the reasons that Plaintiff's claims should be dismissed or summary judgment entered in Defendant's favor.

A.  <u>Plaintiff 's Equal Pay Act Claim Should Be Dismissed Because this Court Lacks Jurisdiction and the Claim is Untimely.</u>

Plaintiff's Equal Pay Act claim should be dismissed because this Court has no jurisdiction over this claim and she failed to file the claim within the applicable statute of limitations.

The Court of Federal Claims has exclusive jurisdiction over an Equal Pay Act claim brought by a federal employee where the amount in controversy exceeds $10,000.  28 U.S.C. §§ 1346(a)(2), 1491; see Warren, 21 FEP Cases 664 (N.D. Ga. 1979).  Cases must be brought in either the Court of Federal Claims or in the federal district where the Plaintiff resides.  *Parker v. King*, 935 F.2d 1174, 1178 (11th Cir. 1991); *Brooks v. Weinberger,* 637 F. Supp. 22 (D.D.C. 1986).  Plaintiff's Equal Pay Act claims exceed $10,000 and therefore fall within the exclusive jurisdiction of the Court of Federal Claims.  Even if Plaintiff's claims did not exceed $10,000, Plaintiff resides in Maryland and therefore the District of Columbia would not have jurisdiction over here Equal Pay Act claim.  <u>See</u> Exhibit to Complaint, Dkt. 1, at p. 3 (showing Plaintiff with a Maryland address).

In addition, Plaintiff did not file her Equal Pay Act claim within the applicable statute of limitations.  "The Equal Pay Act bars any action not filed within two years after a cause of action accrues, and allows three years if the offending conduct was willful."  *Turner*, 383 F.Supp. 2d at 179 (citing 29 U.S.C. § 255).

Plaintiff filed her complaint in the United States District Court for the Southern District

of Maryland on May 9, 2006. *See* Compl. at 1. Plaintiff claims that she did not receive equal

pay from the Defendant from 2002-2005. *See* Am. Compl. ¶ 81. However, due to the statute of

limitations set forth in the EPA, Plaintiff's claim of unequal pay is untimely from the period of

2002 either through May 8, 2003, if Plaintiff can show that Defendant's conduct was willful, or

though May 8, 2004, if Plaintiff cannot show that Defendant's conduct was willful. *See Turner*,

383 F.Supp. 2d at 179 (citing 29 U.S.C. § 255). Therefore, even if Plaintiff were able to show

that Defendant failed to pay Plaintiff at the same rate as male co-workers for substantially

similar work, Plaintiff will be unable to recover any damages for that time period.

To the extent that Plaintiff's EPA claims from May 2004 to April 30, 2005 were timely,

when she retired [Am.Compl. ¶4], Plaintiff still cannot show that the GSA "paid male and

female employees different wages for substantially equal work." *Turner v. District of Columbia*,

383 F.Supp. 2d 157, 179 (D.D.C. 2005) (quoting *Broadus v. O.K. Industries, Inc.*, 226 F.3d 937,

941 (8th Cir. 2000)). Plaintiff points to no other male in the GS-13, Series 343, who was earning

more money than her for substantially similar work. *See* Am. Compl. ¶ ¶ 80-88. Plaintiff claims

that she was performing the job duties of a GS-14 Program Expert, while only receiving the pay

of a GS-13. Am. Compl. ¶ 82. However, the EPA explicitly "authorize[s] employers to

differentiate in pay on the basis of *seniority*, merit, quantity or quality of production, or any other

factor other than sex, even though such differentiation might otherwise violate the Act." *County

of Wash. v. Gunther*, 452 U.S. 161, 169 (1981) (emphasis added). Plaintiff was a GS-13 and was

paid an equal amount to other GS-13s. Since Plaintiff cannot specify any male that was earning

more than her for substantially the same work, Plaintiff's EPA claims should be dismissed for

failure to state a claim upon which relief can be granted.

B.  Plaintiff's Unexhausted Claims Must Fail

If an employee does not contact an EEO counselor within 45 days after the alleged

discriminatory event, she will not ordinarily be permitted to maintain an action in federal court

on that claim.  *See Brown v. Marsh*, 777 F. 2d 8, 13 (D.C. Cir. 1985); *Miller v. Smith*, 603 F.

Supp. 1244, 1246 (D.D.C. 1985).

1.  Failure to Exhaust Claim Referring to Transfer

GSA dismissed the claim of discrimination based on race, sex, age, national origin,

and reprisal from an intra-agency transfer due to untimely contact with GSA's EEO Office.

Plaintiff was transferred from the Office of Information Technology to the Office of Real

Property in August 2001.  Exhibit 9 (Letter from GSA, Nov. 12, 2002), p. 4.  Plaintiff first

contacted the GSA's EEO Office on May 31, 2002, 273 days after the alleged discriminatory

transfer.  *Id.*  This contact was well beyond the 45 day limit.  *Id.*  Therefore, she is barred from

pursuing discrimination claims regarding her 2001 transfer, and this claim should be dismissed

by this Court for lack of subject matter jurisdiction.[13]

2.  Failure to Exhaust Claim Relating to 2002-2003 Performance Evaluation

Plaintiff's amended complaint claims discrimination for "negative employment

evaluations for the reporting period October 1, 2002 to September 30, 2003."  Am. Compl. ¶ 8.

---

[13] Even if the GSA had not dismissed Plaintiff's complaint, this Circuit has established that "'a
purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance,
cannot rise to the level of a materially adverse employment action.'" *Brown v. Brody*, 199 F.3d
446, 456 (D.C. Cir. 1999) (*quoting Ledergerber v. Strangler*, 122 F.3d 1142, 1144 (8th Cir.
1997) (*quoting Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).   Since
Plaintiff did not experience a diminution in pay or benefits, her transfer to the Office of Real
Property would not constitute an adverse employment action. See Exhibit 3 (Calhoun Dep.), p.
100:7-20.

However, there is no evidence in the record that Plaintiff filed EEO claims concerning either multiple performance evaluations or an evaluation for the October 1, 2002 to September 30, 2003 reporting period.  Since Plaintiff did not bring an administrative claim against the agency for the 2002-2003 performance review, Plaintiff has failed to exhaust her administrative remedies.  Therefore, she is barred from pursuing discrimination claims regarding her 2002-2003 performance review.

### 3.  Failure to Exhaust Claims Referring to Denial of Trainings, Awards and Leave

Plaintiff's amended complaint raises several other issues that she never pursued through the administrative process the GSA's EEO Office.  Plaintiff claims that in EEOC No. 100-2004-00302X, GSA's EEO Office investigated her claims that she was denied selection for an Advanced Leadership Development program and that she was not given employment awards that were given to similarly situated co-workers.[14]  Am. Compl. ¶ 8.  However, there is no indication from that case, nor any other EEO case, that Plaintiff ever filed any complaints with the EEO Office regarding these issues.  Furthermore, in her amended complaint, Plaintiff alleges that she was denied leave in March 2002, unlike similarly situated co-workers, Am. Compl. ¶ 19, and that her request to attend a Human Resources Workshop in March 2002 was denied.  Am. Compl. ¶ 16.  Again, there is no evidence that Plaintiff ever filed any complaints with GSA's EEO Office regarding these issues.  Therefore, she is barred from pursuing discrimination claims regarding employment awards, selection for the Advanced Leadership Development program, denial of training at the Human Resources Workshop, and denial of leave, and these claims should be dismissed by this Court.

---

[14] Plaintiff actually was given the same employment awards that were given to all other co-workers in the division.  Exhibit 25 (Langfeld Aff.), p. 6.

C.  Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination
on the Basis of Race, Color, Sex, Age or Reprisal Because Denials
of Requests to Attend Training Sessions and a Fully Successful
<u>Performance Evaluation are not Adverse Employment Actions.</u>

The D.C. Circuit has recently clarified that in considering an employer's motion for

summary judgment "[i]n a Title VII disparate-treatment suit where an employee has suffered an

adverse employment action and [the] employer has asserted a legitimate,

[non-retaliatory/]nondiscriminatory reason for the decision, the district court need not—and

should not—decide whether the plaintiff actually made out a prima facie case under McDonnell

Douglas." *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)

(emphasis in original); *see Pardo-Kronemann*, 541 F. Supp. 2d at 215-16 (stating that the Brady

principle applies to Title VII retaliation suits).  Instead, the district court should resolve only one

question: Has the employee produced sufficient evidence for a reasonable jury to find that the

employer's asserted non-retaliatory/non-discriminatory reason is a pretext for

retaliation/discrimination. <u>See</u> *Brady*, 520 F.3d at 494; *Short*, 2008 WL 2174856, at *3;

*Pardo-Kronemann*, 541 F. Supp. 2d at 215-16.

The instant case is a Title VII disparate-treatment suit and Defendant has asserted

legitimate, non-retaliatory/non-discriminatory reasons for each of the challenged actions. (*See*

*infra* Part IV D.)  Thus, under Brady, this Court must as an initial matter determine whether

each claim of retaliation and race discrimination that remains in this case involves an adverse

action. *See Brady*, 520 F.3d at 494 (making clear that the Brady rule applies only "where an

employee has suffered an adverse employment action"); *Brantley v. Kempthorne*, 2008 WL

2073913 at *4 (D.D.C. May 13, 2008) ("[T]he Court must first determine whether any of the

conduct underlying the claims constituted an adverse action.").  If a particular claim does not

33

involve an adverse action, then it fails as a matter of law. *See Brantley*, 2008 WL 2073913, at *4-*5 (finding that certain of the plaintiff's discrimination claims fail because they do not involve adverse actions). If, on the other hand, a particular claim does involve an adverse action, then the Brady rule applies, and this Court must determine whether Plaintiff has produced sufficient evidence for a reasonable jury to find that Defendant's asserted non-retaliatory/ non-discriminatory reason for the action is a pretext for retaliation/discrimination. *See id.* at *5. In making that determination, this Court must consider whether a jury could infer retaliation/discrimination from: (1) Plaintiff's prima facie case; (2) any evidence that Plaintiff may present to attack Defendant's stated non-retaliatory/nondiscriminatory reason for the action; and (3) any further evidence of retaliation/discrimination that may be available to Plaintiff. Short, 2008 WL 2174856, at *3 (citing *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998)).

"A common element required for discrimination and retaliation claims against federal employers...is thus some form of legally cognizable adverse action by the employer." *Brown v. Brody*, 199 F.3d 446, 453 (D.C. Cir. 1999).

"An 'adverse employment action' within the meaning of *McDonnell Douglas* is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998))). "'Not everything that makes an employee unhappy is an actionable adverse action. Minor and even trivial employment actions that an irritable, chip-on-the-shoulder

34

employee did not like would otherwise form the basis of a discrimination suit.'" *Id.* (quoting *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001)). "'Mere idiosyncracies of personal preference are not sufficient to state an injury.'" *Id.* (quoting *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)).

          1.   Plaintiff's Fully Successful Performance
              <u>Evaluations are Not Adverse Personnel Actions.</u>

There is a "thick body of precedent...[that] refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions." *Brown v. Brody*, 199 F.3d 446, 458 (D.C. Cir. 1999) (citations omitted). In *Brown*, the "poor" performance evaluation did not constitute an adverse employment action because it did not affect the plaintiff's grade or salary. *Id.*

This case presents an even stronger case than *Brown* because the plaintiff in that case was rated "superior" in only three out of five specific areas. *Id.* Here, for both the 2001-2002 and the 2002-2003 performance evaluations, Plaintiff was given the highest rating possible for her overall score, as well as for each individual "Critical Element." *See* Exhbit 20 (Employee Review and Rating, Oct. 11, 2002), p.1; Exhibit 24 (Employee Review and Rating, Oct. 7, 2003), p. 1. As noted above on p. 29, Plaintiff failed to exhaust a claim concerning the 2002-2003 performance evaluation. Although she did exhaust a claim concerning her 2001-2002 evaluation, she did not raise this claim in her Amended Complaint. *See* Amended Complaint, ¶8. Even if she did, for the 2001-2002 performance review, she received a successful rating. That rating was based on the fact that "[Plaintiff] was new to the Division. If [he] had not [factored that in], based on her performance, she would have failed – resulting in a rating of 'unsatisfactory.'" Exhibit 25 (Langfeld Aff.) at p. 3. Langfeld provided comments on Plaintiff's

accomplishments and suggestions for future improvement in the comment section based on his

"personal observations of her work, as well as the feedback [he] received from her team leaders."

*Id*. at 3.  Although Langfeld addressed many areas where he felt improvement was necessary, it

was not unusual for Langfeld to make comments on an employee's evaluation form.  *Id.*   In any

event, Plaintiff's performance reviews were not tied to any monetary award or benefit.  Exhibit

19.  Since Plaintiff's fully successful performance evaluations did not affect Plaintiff's grade or

salary, Plaintiff fails to establish that the performance evaluations were adverse employment

actions.  Thus, Plaintiff's claims of discrimination with respect to her performance reviews fail

as a matter of law and those claims must be dismissed.

## 2.  Denial of Training

This Circuit is in agreement with other circuits that hold that a denial of training only

rises to the level of an adverse personnel action if "the training is materially related to the

employee's job responsibilities or possibilities for advancement."  *See Turlington v. Atlanta Gas

Light Co.*, 135 F.3d 1428, 1436 n.16 (11th Cir. 1998) (cited by *Freedman v. MCI

Telecommunications Corp.*, 255 F.3d 840, 845 (D.C. Cir. 2001)); *see also Nelson v. Secretary*,

*United States Dep't of Commerce*, 1986 U.S. Dist. LEXIS 29404 *24-25 (showing that no

discrimination existed when the plaintiff was denied a training course in computer programming

because it did not relate to her job of data collection).

Here, Plaintiff was granted training on numerous occasions between 2002 and 2003 when

the training, meeting, or conference related to the mission of the office, which was real property.

*See e.g.*, Exhibit 12 (Official Academic Record for Appraisers, Oct. 10, 2002; Business

Management Research Associates, Inc. Certificate of Training; Email from Langfeld to Calhoun,

July 29, 2003; Email from Langfeld to Langfeld, Sept. 22, 2003; Email from Langfeld to

Calhoun, Nov. 14, 2003; Email from Langfeld to Calhoun, Apr. 4, 2003; Email from Langfeld to

Calhoun, Dec. 8, 2003).  For example, Plaintiff was allowed to take a week-long appraisal course

in Baltimore, Maryland, a week-long Performance Based Service Contracting course, and was

allowed to attend the Federal Buildings Expo for two consecutive days.  *See* Exhibit 12 (Official

Academic Record for Appraisers, Oct. 10, 2002; Business Management Research Associates,

Inc. Certificate of Training; Email from Langfeld to Calhoun, July 29, 2003; Email from

Langfeld to Calhoun, Apr. 4, 2003).

Langfeld and Thomas denied the trainings complained of in this action because they did

not relate to real property.  *See, e.g.*, Exhibit 10 (Langfeld Aff.) at p. 4, and Exhibit 14 (emails).

Since Plaintiff received training related to her job and real property, and the trainings

complained of in this case do not relate to the employee's job responsibilities or possibilities for

advancement, the trainings in this case cannot be considered adverse personnel actions.

> D.  Plaintiff has Failed to Establish a Case of Discrimination based on Race, Color, Sex,
> Age, or Reprisal because Plaintiff Cannot Establish that Defendant's Legitimate,
> <u>Nondiscriminatory Reasons for Employment Actions were Mere Pretext.</u>

There were legitimate, non-discriminatory reasons for the GSA's actions that were not

pretext.  As set forth in *Holcomb*, *supra*, once the defendant has set forth reasons for the

"discriminatory" conduct, the burden falls on the plaintiff to provide evidence to the contrary.

433 F.3d at 896.

> 1.  <u>Denial of Training</u>

Training for each employee in the Office of Real Property was limited to two events per

year.  Exhibit 10 at 1.  Plaintiff averaged two training courses per year, and Plaintiff was

approved to take more than two training courses one year.  Exhibit 3 (Calhoun Dep.) at pp.

122:20-123:1.  Plaintiff could point to no other employee at the Office of Real Property who

received more training than the two that were permitted to them each year.  *Id.* 174:22-25.  When

specifically asked whether she knew that her co-workers had taken the training courses that she

had been denied, Plaintiff stated, "[T]hey probably got the training they wanted.  I don't know

what they were denied.  I know I was denied.  I don't think they were denied.  If they requested

training, I believe they got the training."  *Id.* at pp. 127:22-128:3.  However, Plaintiff never

presented any evidence other than her belief that similarly situated employees not in her

protected class were given training opportunities that she was denied.

Since everyone in Plaintiff's office, including the Plaintiff herself,  were offered the

opportunity to take two training courses or seminars per year that were related to real property

and within budgetary constraints, Plaintiff was not treated differently from similarly situated

employees outside her protected class.

In addition, Plaintiff is also unable to prove that the employer's legitimate, non-

discriminatory reasons for denying her training requests were mere pretext.  As set forth above,

Plaintiff was only denied training when it did not relate to the mission of the office or it was not

within budgetary constraints.  Exhibit 10 (Langfeld Aff.) at p. 1.  Plaintiff now must prove that

these legitimate, non-discriminatory reasons were mere pretext.  *See Short*, 555 F.Supp.2d at 172

(citations omitted).  Defendant submits that Plaintiff is unable to do so, and therefore this

complaint should be dismissed for failure to state a claim upon which relief can be granted.

2.  <u>Non-selections</u>

Non-selection cases frequently rely on a comparison of qualifications between the

selectee and the plaintiff. *See, e.g.*, *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284 (D.C. Cir. 1998); *Stewart v. Ashcroft*, 352 F.3d 422 (D.C. Cir. 2003). "'The employer has discretion to choose among equally qualified candidates, provided that the decision is not based upon unlawful criteria.'" *Brown v. Brody*, 199 F.3d 446, 460 (D.C. Cir. 1999) (*quoting Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981)). Regarding an employer's selection between qualified candidates,

> We must assume that a reasonable juror who might disagree with the employer's decision, but would find the question close, would not usually infer discrimination on the basis of a comparison of qualifications alone. In a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer made a judgment call.

*Aka*, 156 F.3d at 1294.

The Court of Appeals for the District of Columbia, finding summary judgment appropriate in a case where there were only "fine distinctions" between the qualifications of candidates, stated:

> This Court will not reexamine governmental promotion decisions where it appears the Government was faced with a difficult decision between two qualified candidates, particularly when there is no other evidence that race played a part in the decision.

*Stewart*, 352 F.3d at 430.

For each non-selection case, the selecting official made his or her decision based on merit alone and chose the most qualified candidate for the position.

### a. Non-selection: Bradfield

Tokey Bradfield, the selectee for Vacancy Announcement 010004103, was selected over Plaintiff based on legitimate, non-discriminatory reasons. The position required "a set of technical skills relating to the GSA internet page and the position became the technical advisor for the entire [division]." Exhibit 39 (EEO Counselor's Report, June 7, 2001, p. 4. Whitson had

worked with and personally observed Bradfield's performance over several years, and based on these observations, he believed that she would be qualified for the job.  Exhibit 5 (Whitson Aff.), p. 3.  Whitson stated:

> Ms. Tokey Bradfield worked for me for several years in increasingly responsible positions.  Her work was always exemplary, and I believe I consistently rated her performance as Outstanding.  Ms. Bradfield had demonstrated the ability to perform the work of the GS-14 position by previously performing comparable work at the GS-13 level.  I had absolute confidence in her ability to perform at the GS-14 level and as such, I judged her to be the best-qualified candidate for the GS-14 position.

*Id.*

> Whitson also believed that Bradfield was more qualified than Plaintiff because

> Ms. Bradfield had performed work similar to the work required by the announced position, but at a lower grade level.  She always performed this work in an outstanding manner with minimal guidance.  She was clearly ready and able to undertake similar work at the higher grade level.  The nature of the work was of critical importance to the organization and required that the selectee would be able to "hit the ground running."  In my opinion, Ms. Bradfield would be able to do this.  I believe that the Complainant's qualifications for the job were based primarily on education and that she did not have the depth of experience that the selectee had.  In my opinion, Ms. Bradfield was the standout candidate for this position.

*Id*.

Patricia Lewis (African-American female with no prior EEO history) served as the Personnel Specialist responsible for processing the selection for Vacancy Announcement 010004103.  Exhibit 4 (Sworn Statement of Patricia Lewis).  As a personnel specialist, Lewis would be qualified to make a recommendation as to which candidate is the best qualified for a position.  Exhibit 1 (Admin. Hearing), p. 141:4-10.  Lewis stated that "based on the resumes of the applicants, the selectee seemed more qualified due to her compute[r] and information technology experience." Exhibit 4 (Sworn Statement of Patricia Lewis).  Lewis went on to say that "the Complainant and the other applicant had more analytical work experience, which was less applicable to the position description."  *Id.*

40

Peterson-Parker made the selection but testified that she did so because she felt Whitson had directed her to do so. Exhibit 2 at pp. 52:6-21; 53:1-10. However, even if this were true, Ms. Calhoun applied on the last day of the announcement [Exhibit 3 at pp. 133:21-25] after Whitson has spoken to Ms. Peterson-Parker and had gone on vacation. Exhibit 1 at pp. 40:15-41:3; 134:4-14. At this point in time, Plaintiff had not yet applied. Thus, it would be impossible for Mr. Whitson to have discriminated against her based on her race or for any other reasons.[15]

b. Non-selection: Holstrom

Langfeld, the selecting official for the Holstrom selection, had legitimate, non-discriminatory reasons for selecting Holstrom over Plaintiff for the vacancy. Exhibit 28 (Langfeld Aff., June 15, 2004), p. 3. Langfeld "selected the best qualified candidate based on their experience in Government real estate, and their knowledge, skills, and abilities related to Government real estate." Id. Education could not be substituted for specialized experience. Exhibit 27 (Vacancy Announcement 030008903MP), p. 2. "[G]enerally GS-14 positions in the Real Property Policy Division require indepth (sic) knowledge of Government real estate, and extensive experience that developed the person's knowledge, skills and abilities in Government real estate. They must be able to independently perform these duties with minimal supervision and produce high quality work products in a timely manner." Exhibit 28 (Langfeld Aff.) at p. 3. This criteria was applied consistently to all candidates, without regard to race, color, sex, age, or prior EEO activity. Id. at 4.

Holstrom had twenty-nine years of real property experience, whereas Plaintiff only had

---

[15] Furthermore, neither Personnel Specialist Lewis nor Peterson-Parker ever heard Whitson make derogatory comments or jokes about African-Americans, females, people who have filed EEO claims, or Calhoun herself. See id.; see also Exhibit 1 (Admin. Hearing), pp. 183:19-187:15. Lewis further commented, "I do not believe that this selection was in any way motivated by discriminatory factors." Exhibit 4 (Sworn Statement of Patricia Lewis).

two years of real property experience. *Id.* at 3. In addition,

> Mr. Holstrom was better qualified because he had at least 29 years of indepth (sic) government real property experience in the National Capital Region and in the Central Office. His application demonstrated that he is experienced in policy analysis and development in the Public Building Service. He has excellent writing skills and he is a Real Property Regulatory expert. Of all of the applicants he was the best qualified person.

*Id.*

> In contrast, regarding Plaintiff, Langfeld stated:

> I did not select Ms. Calhoun for several reasons. First, she had no indepth (sic) Real Property experience. She had only been dealing with real property issues for 3 years. Second, she improperly stated in her application that she was a GS-14, but she is a GS-13. (Applicants should have had accurate information in their applications). Third, she gave an example of her work in her application that she did poorly in. Her application said she analyzed real property topics for the GENERAL REFERENCE GUIDE FOR REAL PROPERTY POLICY. This is an assignment that she did poorly and her poor performance was referenced in her 10/11/02 performance rating.

*Id.*

As shown above, experience in real estate was the most important criteria for selecting a candidate. *See id.*; Exhibit 27 (Vacancy Announcement 030008903MP). Holstrom, the selectee, had twenty-nine years of real property experience, whereas the Plaintiff only had three years of real property experience. Exhibit 28 (Langfeld Aff.) at p. 3; *see also* Exhibit 40 (Holstrom Application; Calhoun Application, Aug. 14, 2003). There is not even a "fine distinction" between the qualifications of the candidates. *See Stewart*, 352 F.3d at 430 (showing that even when the selectee actually had 18 months *less* experience, that still was insufficient to show discrimination in hiring practices). Holstrom clearly had more real estate experience than Plaintiff.

### c. Non-selections: Burmeister and McDonald

Langfeld, the selecting official for both the Burmeister and McDonald selections, had

legitimate, non-discriminatory reasons for selecting both candidates over Plaintiff for the vacancies. Exhibit 31 (Langfeld Aff., Dec. 13, 2004) at p. 2. Both vacancies were "filled based on the merit promotion principle." *Id.* at 2. For both vacancies, Langfeld compared the candidates' qualifications listed on their applications and resumes to select the best-qualified candidate. Langfeld Dep. 11:8-10, Jan. 11, 2006. Langfeld "rated and evaluated the candidates based on the depth of their real property experience and the number of years of experience." Exhibit 31 at p. 2. Specifically, in-depth real property experience "means that [the candidate has] done real estate work in other offices in the GSA or in other federal agencies." Langfeld Dep. 13:5-7, Jan. 11, 2006. Langfeld's criteria was substantiated by both Vacancy Announcements,[16] which stated that "applicants will be rated on the extent and quality of their specialized experience relevant to the duties of this position." Vacancy Announcement 040019503MP, p. 2; Vacancy Announcement 040035103MP, p. 2. Specialized experience in real property, rather than education or any other factor, was the main determinant for selection. *See* Langfeld Aff. 4, Dec. 13, 2004; Vacancy Announcement 040019503MP, p. 2; Vacancy Announcement 040035103MP, p. 2. This criteria was applied consistently to all candidates, without regard to race, color, sex, age, or prior EEO activity. Langfeld Aff. 2, Dec. 13, 2004.

Both Robert Burmeister, the selectee for Vacancy Announcement 040019503MP, and Virginia McDonald, the selectee for Vacancy Announcement 040035103MP, "stood out for the depth and quality of experience that they possessed and the length of time that they were considered experts in their field." Langfeld Aff. 2, Dec. 13, 2004.

Regarding the first selection, Langfeld stated:

Mr. Burmeister, the selectee for 040019503MP, had sixteen years of progressive real estate experience since 1988. He had IT experience related to GSA's Public Building

---

[16] The Vacancy Announcements were for the same position with identical job descriptions. Langfeld Aff. 2, Dec. 13, 2004. Burmeister originally accepted the job, and subsequently turned it down. *Id.* Langfeld closed the Vacancy Announcement, and then reopened it a few months later. *Id.*

Service ("PBS").  He was the Contracting Officer's Technical Representative ("COTR") on IT projects related to Real Property.  He was the PBS competitive sourcing manager.  As a result of that he knows the PBS business lines and [Public Building Service] organizations.  He has extensive real estate analysis experience.  He attends meetings with outside industry and government and state agencies.  He knows the Activity-Based Costing Model.

*Id*. at 3.

Regarding the second selection, Langfeld stated:

Ms. McDonald, the selectee for Announcement 040035103MP, had twenty-two years of real estate experience in the National Capital Region.  She was BOMA certified.  She had extensive marketing experience with customer agencies.  She worked on the PBS [Public Building Service] delegations program and led focus groups and customer round tables.  She worked on preparing the PBS national marketing plan.  She had acquisition management and real property disposal experience.  She had been a team leader, did procurement, was a COTR and worked on the Bush/Cheney transition team.  You have to be extremely organized in order to work on the transition teams between administrations.  Ms. McDonald had incredible in-depth experience.

*Id*. at 3-4.

In contrast, Plaintiff only had three years of real property experience.  Furthermore,

Ms. Calhoun on her application claimed to be a GS 14/Step 10 which is not true.  She was a GS-13.  She said she worked on the General Reference Guide for Real Property Policy updates.  She actually did a poor job on this and had to be taken off this assignment at the request of her team leader.  She had IT experience in MK and IRMS, which had nothing to do with real property.

*Id*. at 3.

As set forth above, experience in real property was the most important criteria for

selecting a candidate.  *See id*. at 4; Vacancy Announcement 040019503MP, p. 2; Vacancy

Announcement 040035103MP, p. 2.  The two selectees, Burmeister and McDonald, had sixteen

and twenty-two years of real property experience, respectively, whereas the Plaintiff only had

three years of real property experience.  Exhibit 31 at pp. 3-4; *see also* Exhibits 8, 32, 38, 38A &

38B.  Again, there is no "fine distinction" between the qualifications of the candidates.  *See*

*Stewart*, 352 F.3d at 430.  Both Burmeister and McDonald clearly had more real property

experience than Plaintiff.

Furthermore, although Plaintiff claims she was more qualified than the selectees, she offers no evidence of her superior qualifications beyond stating that she was "already doing the work." Exhibit 3 (Calhoun Dep.) at p. 92:6-9. Plaintiff admits that she does not know any information about Burmeister's experience in real estate or anything about his background. *Id.* at 87:19-25. Plaintiff also does not have any knowledge of McDonald's background, experience in real estate, or education. *Id.* at 92:12-20.

In order to avoid summary judgment by proving that the GSA's legitimate, non-discriminatory explanations for the alleged acts of discrimination or retaliation are pretextual, Plaintiff must show "'*both* that the reason[s] [were] false, *and* that discrimination (or retaliation) was the real reason.'" *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis supplied)). Defendant submits that Plaintiff is unable to do so in light of the total circumstances of this case, and thus, this Court should dismiss Plaintiff's complaint.

## V.  CONCLUSION

For the reasons set forth herein, Defendant respectfully requests this Court dismiss this civil action or enter summary judgment in Defendant's behalf. A proposed order is attached.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
IONA D. CALHOUN,                         )
)
        Plaintiff,                      )
)
    v.                                   )  Civil Action No. 06-1441 (HHK/JMF)
)
DAVID L. BIBB, ADMINISTRATOR,            )
GENERAL SERVICES ADMINISTRATION,         )
)
        Defendant.                     )
_____)

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.  On December 15, 2000, the GSA advertised a Computer Specialist, GS-14 position.
Vacancy Announcement No. 010004103 in the Office of Information Technology.   Exhibit 1,
hereto (Admin. Hearing in EEOC No. 100-2004-00691X, June 6, 2006), pp. 132:17-21; 217:17-
218:4; Exhibit 2 (Wanda Peterson-Parker Dep., Aug. 12, 2005), p. 15:21-16:5.

2.  Plaintiff applied for the position on the last day of the open period. Exhibit 1 at pp.
40:15-41:3.

3.  Before the last day of the application period, Paul Whitson, the Division Director of
the Office of Information Technology, Strategic IT Issues Division, met with Wanda Peterson-
Parker, Deputy Director for the Office of Information Technology, Strategic IT Issues Division
to discuss Whitson's upcoming vacation and the open vacancy announcement.  Exhibit 1
(Admin. Hearing), p.134:4-14.  During the meeting, Whitson told Peterson-Parker that he
believed that one of the employees in the IT Issues Division, Tokey Bradfield, was the best
qualified person for the job.  *Id.* at 134:11-14.

4. When Whitson told Peterson-Parker that he thought Bradfield was the most qualified,

there were several days left in the period during which the vacancy announcement was open, at a time when not all applications were in. *Id.* at 16:21-17:6.

5. At the time of the meeting, neither Whitson nor Peterson-Parker knew whether Calhoun had applied. Exhibit 1 (Admin. Hearing), pp. 193:21-194:3. In fact, at the time Whitson told Peterson-Parker that Bradfield was the most qualified, Plaintiff had not yet applied; she applied on the last day the vacancy announcement was open. *Id*. at 40:15-41:3.

6. After the vacancy announcement closed, Patricia Lewis, Human Resources Specialist gave Peterson-Parker a referral list of the best qualified candidates, which consisted of three names: Tokey Bradfield, a Korean female, Tisha Boddie, an African-American female, and Plaintiff. Exhibit 1 (Admin Hearing), p. 143:3-10; *see also* Am. Compl. ¶ 26.

7. As a personnel specialist, Lewis was qualified to make a recommendation as to which candidate was the best qualified for the position and believed that Bradfield was the best qualified. Exhibit 1 at 141:4-10; Exhibit 4 (Sworn Statement of Patricia Lewis, Mar. 26, 2004), p. 1. Furthermore, Lewis believed that the two other applicants on her referral list, Plaintiff and Boddie, were less qualified. *Id.*

8. Ms. Peterson-Parker made decisions for Whitson in his absence. Exhibit 1 at p.115:6-12; Exhibit 5 (Whitson Aff. 2, Mar. 12, 2004), p. 1-2. Peterson-Parker selected Tokey Bradfield, a Korean female, for the position. Exhibit 6 (Merit Promotion Referral).

9. Ms. Bradfield had performed work similar to the work required by the announced position in an outstanding manner with minimal guidance. Exhibit 5 at p. 3. Plaintiff's qualifications for the job were based primarily on education. *id.*

10. Plaintiff exhausted only a race claim concerning the Bradfield appointment. Exhibit 1 at p. 7:22-8:4.

11. In August 2001, Plaintiff transferred from a GS-13 Computer Specialist position

2

within the Office of Information Technology to the position of a GS-13 Program Analyst within the Office of Real Property.  *See* Exhibit 8 (Resume of Iona Calhoun), p. 1-2.

12.  Plaintiff filed an EEO claim in Case Number EEOC 100-2005-00414x on May 31, 2002, claiming that the August 2001 transfer was retaliation due to her engaging in lawful protected activity on January 26, 200l, more than 45 days after the alleged unlawful transfer. Am. Compl.  ¶ 11; *see also* Exhibit 9 (Letter from GSA, Nov. 12, 2002), p. 4.

13.  Plaintiff was given the same opportunities for training as other employees in the Office of Real Property. Each employee in the Office of Real Property was entitled to two events per year.  Exhibit 10 (Stanley Langfeld Aff., Apr. 1, 2003), pp. 1-2, Exhibit 3, pp. 122:20-123:1.

14.   ORP policy was that the training must be shown to be  "related to the mission of the office and within budgetary constraints."  Exhibit 10 at p. 1; Exhibit 11 (David Bibb Aff. Mar. 4, 2003), pp. 1-2.

15.  Plaintiff was only denied training when it was not related to the mission of the office or for other nondiscriminatory reasons. *See* Exhibits 10, 12, 13 and 14; .

16.  The record is replete with examples of Plaintiff's performance failures while working for the Office of Real Property.   Exhibit 20 (Employee Performance Review and Rating, Oct. 1, 2001-Sept. 30, 2002); Exhibit 3 (Calhoun Dep.), pp. 95:19-24; 97:8-11; Exhibit 21 (Email from Langfeld to Calhoun, May 28, 2003; Email from Langfeld to Calhoun, Mar. 13, 2003; Email from Langfeld to Calhoun, Nov. 16, 2001; Email from Langfeld to Calhoun Jan. 21, 2003); Exhibit 22; Exhibit 23 (Email from Langfeld to Calhoun, May 1, 2003; *see also* Email from Calhoun to Langfeld, May 1, 2003; Email from Calhoun to Langfeld, Sept. 2, 2003).

17.  On October 7, 2003, Langfeld rated Plaintiff as "Successful," the highest possible rating, on her Employee Performance Review and Rating for the period of October 1, 2002, to September 30, 2003.  Exhibit 24 (Employee Review and Rating, p. 1, Oct. 7, 2003).

18. Performance ratings at the GSA are not tied to cash awards. Exhibit 19 (Declaration of Lena Fana, Director of Employee Relations, GSA).

19. From July 28, 2003 to August 8, 2003, the Office of Real Property advertised for a Program Expert, GS-14 position under Vacancy Announcement 030008903MP. Exhibit 27 (Vacancy Announcement 030008903MP).

20. Langfeld selected Kenneth Holstrom, who was the best qualified. Exhibit 28 (Langfeld Aff. 3, June 15, 2004).

21. From February 25, 2004, to March 9, 2004, the Office of Real Property advertised for a Program Expert, GS-14 position under Vacancy Announcement #040019503MP. Exhibit 29 (Vacancy Announcement #040019503MP). Langfeld selected Robert Burmeister, a white male with no prior EEO activity, for the position. *Id*. Langfeld "rated and evaluated the candidates based on the depth of their real property experience and the number of years of experience." Exhibit 31 (Langfeld Aff., Dec. 13, 2004) at p. 2.

22. From May 18, 2004, to June 2, 2004, the Office of Real Property re-advertised for a Program Expert, GS-14 position under Vacancy Announcement #040035103MP. Exhibit 33 (Vacancy Announcement #040035103MP). This new vacancy announcement was not significantly different from Vacancy Announcement #040019503MP. Exhibit 29; *see also* Exhibit 31 at 2. Virginia McDonald's application earned the highest rating at 99.77. Exhibit 34 (QuickHire Staging Area Applicant Listing, June 3, 2004) and she was selected as the best qualified. Exhibit 31 (Langfeld Aff.) at p. 3; *see also* Exhibit 38A (McDonald's application submission).

4

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, Bar # 434122
Assistant United States Attorney

_____/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137