# AFFIDAVIT

Washington, D.C.

I, Stanley Chaitt Langfeld, Director, Real Property Policy Division, Office of Real Property, Office of Governmentwide Policy, GS-15/10, sex (male), Race (Caucasian), age (58), no prior EEO activity, being duly affirmed under oath, make the following statement freely and voluntarily to Brenda J. Smith who has identified herself to me as a Contract EEO Investigator for Draughn & Associates.

I am employed with General Services Administration (GSA), 1800 F Street, N.W., Washington, D.C., 20405, Room 6214. I have been employed with GSA since September 22, 1975 and in my current position since January 1995.

I am responsible for policy development initiatives that relates to management of real property asset. Currently, I supervise a staff of ten employees. My first line supervisor is David Bibb, Associate Administrator, Office of Real Property, Governmentwide Policy and my second line supervisor is G. Marty Wagner, Associate Administrator for Governmentwide Policy.

I am Ms. Calhoun's supervisor. Basically, she has two team leaders, Carol Anadale (FIRM & FRPP related work) and John D. Thomas, who provides general supervision. Both team leaders provide technical guidance to Ms. Calhoun. Additionally, they keep me informed of her progress in terms of her work assignments.

Employees are encouraged to take training that is related to the mission of the office and within budgetary constraints. The employee is entitled to two training courses per fiscal year. This includes seminar and/or conferences (national training sessions)

000191



EXHIBIT Page 1 of 5 Pages

PAGE 1 OF 5 PAGES

GOVERNMENT EXHIBIT 10

Initials: SCL, 4/01/03

such as Blacks In Government (BIG), Federally Employed Women (FEW) and related real property seminar/conference. An employee has the choice of taking two training courses or one training course and attending one conference or any combination, as long as it does not exceed two training opportunities per fiscal year. This policy is applied to all employees.

Employees are aware of the office's training policy. The policy has been discussed with them in staff meetings. In addition, Mr. Sheldon Greenberg, Building Management Specialist, is also my Budget Officer, goes around to each employee seeking their training requests for the fiscal year. He compiles the information and submits a training plan to me for approval.

When Ms. Calhoun first came on board on September 23, 2001, the training plan had already been done. Consequently, there was no training funds set aside for her. However, she requested training and I "found" the money to pay for it. As I stated I encourage all employees to take training as long as it is related to real property and within our budget constraints. When Ms. Calhoun first came on board during our initial orientation about the office, its mission and her duties I pointed to a stack of training materials in my office and told her that I encourage training and that she could take whatever training she wanted "as long as it was related to real property." I did not tell her she could take "any" training she wanted to.

In terms of the BIG Conference, it is Mr. Bibb's office policy that only two people can attend. Ms. Calhoun did not attend the BIG Conference. However, she did attend FEW.

Each division head is given an "Operating Budget." The budget is broken down into categories with funds allotted for travel, training, printing and contracts. For Fiscal Year 2002 I had an initial target allocation of $18,000 for training and an initial target allocation of $19,333 for Fiscal Year 2003. If there is a need, I have the option of

000192

moving money from one category to another. But, basically money is tight. As a result, it is essentially that we limit training funds to office mission related opportunities.

I have the authority to approve or disapprove training for employees under my supervision. If there is a problem then I'll discuss it with my supervisor. Until recently, there has never been a problem in this area. None of the other employees have recently (i.e., in the past six years) requested training that was outside of their field.

Ms. Calhoun requested to attend the Armed Forces Communications and Electronics Association. She made her request to her team leader, Mr. John D. Thomas. Mr. Thomas denied her request because the luncheon was not related to real property. This is in keeping with office policy and I agreed with his decision. It's normal procedure for employees to go to their team leader with training requests. To the best of my knowledge no one from Real Property attended the luncheon.

Ms. Calhoun emailed Mr. Thomas and requested to attend a Smart Card meeting. Mr. Thomas denied her request because again it did not relate to real property. It is basically related to Information Technology (IT) and our office does not deal with IT issues and there is nothing in Ms. Calhoun's duties that relate to IT, since our office deals with real property issues. Contrary to what Ms. Calhoun stated (according to the EEO Investigator), the Smart Card is "not" used as a building pass in GSA Central Office. There is the "potential" that this may be the case in the future. However, as of to date the Smart Card is not use for that purpose. The Smart Card has a "chip" on it that contains personal information about the employee, such as home address, which has nothing to do with access to the building. To the best of my knowledge no one from my office attended the Smart Card meeting.

000193

Page 3 of 5 Pages                                   Initials: _JCL_ 4/01/03

EXHIBIT ___14___

PAGE __3__ OF __5__ PAGES

Again, I encourage Ms. Calhoun to take training that is geared to her learning the real property job. I would like to state that she has taken at least one course that is job related--Principles of Appraisal.

Ms. Calhoun emailed Mr. Thomas and requested to attend the Government and Media Perception and Reality Seminar. He deferred her request to me. I denied her request based on the fact that it was not job related.

There was a concern with Ms. Calhoun's request to take a course "Principles of Appraisal." While I had no problem with her taking the course, I did have a problem in terms of where the course was being offered. I asked Ms. Calhoun where the course was being offered (location). Due to budgetary constraints, this was a concern. I wanted to limit the overall cost of the course, in terms of travel expenses. Consequently, I wanted her to locate a training site that was as close to her duty station (Washington, D.C.) as possible. Initially, she stated that the course was being offered in Denver, Colorado. I asked that she find a closer location. Later, she came up with Columbus, Ohio. I then did some research and found out that the course was being offered in Baltimore, Maryland. I advised her of this and directed that she attend the course in Baltimore.

There was an issue of whether or not she was entitled to hotel expenses or had to commute to and from her residence each day to attend the training. This matter was eventually worked out. However, she did not get overtime (as she requested) for attending the conference, since she is an FSLA exempt employee.

Ms. Calhoun was scheduled to attend an Advance Appraisal course offered in Fiscal Year 2003 which she initially was in agreement to attend. However, she later "pulled out" of the training. Ms. Calhoun continues to request training that is not related to the real property

000194

Page 4 of 5 Pages                                    Initials: _____ 4/01/03

EXHIBIT ___14___

PAGE __4__ OF __5__ PAGES

mission of our office. For example, she requested to take an advance appraisal course that had no relationship to the mission of our office. While appraisal may be related to real property (depending on targeted audience, etc.), this course was specifically for "people who owned their own appraisal business." Ms. Calhoun was aware of this when she requested the training. She does not own an appraisal business and certainly it would have been inappropriate to allow her to take the training which had no relationship to the real property mission of our office.

As a supervisor, I know the importance and advantages of developing your employees. I would like Ms. Calhoun to be a team play, learn the job and help the office accomplish its mission and goals.

The decisions to deny Ms. Calhoun training that is not job related was and is "not" based on her sex, race, age or any other prohibited factor. Additionally, neither was the denials based on reprisal for her participation in a prior EEO activity.

I have read the above statement consisting of five (5) pages. It is true and complete to the best of my knowledge and belief. I have made all necessary corrections and additions, initialing next to each. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

000195

_____          April 1, 2003
Affiant's Signature                      Date

Subscribed and sworn to before me
this 1st day of April, 2003.

_____
Jeanette Jerman Artis
Notary Public
District Of Columbia

Page 5 of 5 Pages    My Commission Expires Feb. 14, 2007

EXHIBIT ___14___

PAGE _5_ OF _5_ PAGES