# AFFIDAVIT

Washington, D.C.

I, Stanley Chaitt Langfeld, Director, Real Property Policy Division, Office of Real Property, Office of Governmentwide Policy, GS-15/10, Sex (male), Race (Caucasian), age (DOB 1-10-45), no prior EEO activity, being duly affirmed under oath, make the following statement freely and voluntarily to Brenda J. Smith who has identified herself to me as a Contract EEO Investigator for Draughn & Associates.

I am employed with General Services Administration (GSA), 1800 F Street, N.W., Washington, D.C. 20405, Room 6214. I have been employed with GSA since September 22, 1975 and in my current position since January 1995.

I am responsible for policy development initiatives that relates to management of real property asset. Currently, I supervise a staff of ten employees. My first line supervisor is David Bibb, Deputy Associate Administrator, Office of Real Property, Governmentwide Policy and my second line supervisor is G. Martin Wagner, Associate Administrator for Governmentwide Policy.

I am Ms. Calhoun's first line supervisor. During the rating period in question, October 1, 2001 through September 30, 2002, Ms. Calhoun had two team leaders—Ms. Carol Anadale and Mr. John D. Thomas (no longer with Real Property Policy Division). Ms. Anadale provides Ms. Calhoun technical guidance related to Foundation Information For Real Property Management (FIRM) and Federal Real Property Profile (FRPP) (formerly Worldwide Inventory—WWI) initiatives.

000423

Page 1 of 7 Pages                                Initials: _SCL_, 4/29/03

GOVERNMENT EXHIBIT 25

PAGE 1 OF 7 PAGES

Mr. Thomas provided general guidance. Additionally, both Ms. Anadale and Mr. Thomas keep me informed of Ms. Calhoun's progress in terms of her work assignments.

When Ms. Calhoun joined my staff, I gave her the "Performance Plan Certification" for her position, Program Analyst, -343, Performance Period October 1, 2001 – September 30, 2002. I asked Ms. Calhoun to review the Critical Elements and Standards for Successful Performance. She was not in agreement with a number of the Elements and Standards. She marked through some of the Elements and Standards that she was not in agreement with and wrote comments such as "redundant, subjective, contradictory, " as well as changing and completely deleting certain ones.

In addition, there is a series of emails from October 26, 2001 to November 15, 2001 between Ms. Calhoun and myself regarding this matter. In response to my request for her to sign her performance plan, Ms. Calhoun stated, "I have not forgotten you….I requested the Program Analyst position description…." I responded that once she was ready I would like to resolve the matter. On November 15, 2001, I again reminded her that I had not received her signed performance plan. I also, responded to her request to have her position as Program Analyst converted to a Computer Specialist by explaining that the Real Property Policy Division only has Realty Specialists and Program Analysts and that her transfer to my Division was fair and reasonable. The grade level (GS-14), position, title and series found on one page of Ms. Calhoun's Performance Plan Certification are merely typos and not met to suggest that she should have been a higher grade.

000424

I reiterated that I would be glad to answer any questions she had regarding the performance plan and that it was the same plan as that for the other GS-13's in the Division. In response, she stated that the

Page 2 of 7 Pages                                Initials: _JeL, 4/29/03_

EXHIBIT __38__
PAGE __2__ OF __7__ PAGES

"critical elements-Standards for Successful Performance" were not clear, concise nor comprehensive and that she had revised them for me. Further, she stated that the critical elements did not appear to correspond to the Management and Program Analyst position description she was provided and that she was waiting to receive the official papers from "Personnel" regarding her reassignment.
Ms. Calhoun did not sign her FY 2002 Performance Plan.

In terms of Ms. Calhoun's FY 2002 Performance Review and Rating Evaluation, I rated her "Successful." Under the section "Comment On The Employee's Progress Toward Meeting The Performance Standard For Each Critical Element," I did just as it said, I provided comments. My comments were based on my personal observations of her work, as well as the feedback I received from her team leaders. I don't consider my comments to be negative, but constructive criticism to point out areas in which improvements were needed. In my comments, I also pointed out her accomplishments. It is not unusual for me to make comments on an employee's performance evaluation form. However, I will say this is the first time I had to address so many areas where improvement is necessary.

I called Ms. Calhoun into my office to discuss her performance evaluation. Ms. Calhoun's assertion that I did not go over the performance concerns during our discussion is not true. Mr. Thomas, her team leader at the time, was also in the meeting. I discussed with her my concerns regarding her performance on the Revised General Reference Guide, the FIRM and FRPP (formerly WWI) RAG Reports and her work on evaluating contractor's proposals.

Ms. Calhoun is fully aware of my concerns regarding her performance in the above-cited areas. The emails I provided the EEO Investigator

000425

Page 3 of 7 Pages

Initials: _RCL, 4/29/07_

EXHIBIT  38

PAGE  3  OF  7  PAGES

are evidence of her knowledge and will show that she was aware of my concerns throughout the entire rating period.

In terms of the Revised General Reference Guide, Ms. Calhoun volunteered to work on this project with Mr. Thomas. I thought this was a good idea. She was new to the Real Property Policy Division and this would give her an opportunity to learn the program.

Ms. Calhoun was tasked with doing research to identify any law, statute, or executive order pertaining to real property that had been passed since April 1998. She submitted the results of her research. While there was some information pertaining to real property, for the most part, the information pertained to labor issues and missing children. For example, H.R. 1219 to amend the Office of Federal Procurement Policy Act and the Miller Act, relating to payment protections for persons providing labor and materials for federal construction projects; H.R. 1693 to amend the Fair Labor Standards Act of 1938 to clarify the overtime exemption for employees engaged in Fire Protection activities; and S. 249 to provide funding for the National Center for Missing and Exploited Children to reauthorize the Runaway and Homes Youth Act, and for other purposes. We do not deal with labor and missing children issues in the Real Property Policy Division, we deal with real property issues. Mr. Thomas had to redo that portion of the Guide for which she was responsible. Both Mr. Thomas and I gave Ms. Calhoun instructions prior to her doing the research. We would have been happy to help her if she had let us know that she needed help.

Ms. Anadale, Ms. Calhoun's team leader on FIRM related initiatives, informed me that she (Calhoun) did not evaluate and rate the contractor's proposals (bids) "prior" to a meeting in which all participants convened to discuss their evaluations and ratings. Ms. Calhoun was fully aware that this was supposed to be an independent process and that all ratings and evaluations were to be done prior to the meeting. Because of her actions the award of the

Page 4 of 7 Pages             000426          Initials: _JCh_ 4/29/03

EXHIBIT 38
PAGE 4 OF 7 PAGES

contract was jeopardized, since Ms. Calhoun had not, prior to the meeting, independently evaluated the proposals.

Ms. Calhoun's performance in the preparation and timely submission of the FIRM and FRPP RAG Monthly Reports was another area in which improvement was needed. On a number of occasions, the evaluation sheets for the reports were incomplete and the data was flawed. Throughout the rating period the deficiencies in the reports were pointed out to Ms. Calhoun as evidenced by the emails provided to the EEO Investigator.

Ms. Calhoun is a member of the FIRM team, along with McDonald Peoples, Carol Anadale, and Mike Mulloy. Because of the problems we were having with her performance on FIRM initiatives, Ms. Anadale asked that she be removed from the team. I denied her request, because I felt that keeping her on the team would help her to learn the program.

In response to Ms. Calhoun's assertion that she was not trained on how to prepare the RAG Reports, all of us were given guidelines on the Reports by the Office of Governmentwide Policy, Chief Information Officer (CIO). If Ms. Calhoun needed assistance, all she had to do was ask. Her team leader and I would have provided her help. Instead, she chose to blame her errors, lack of thoroughness and untimely submission of the Reports on someone else, like her team leader.

We also had a problem with Ms. Calhoun either arriving 35-40 minutes late to meetings, leaving meetings earlier and/or simply not showing up at all. I spoke to Ms. Calhoun about this matter as well as sent her an email regarding her non-attendance at the twice yearly WWI Users Group meeting with our customer agencies governmentwide.

000427

In June of 2002, I sent an email to Human Resources, Subject: Work Performance Related to RAG Report & Evaluation of FIRM Support Contract. I advised Ms. Fant that I was planning to send an email to Ms. Calhoun in an effort to get her to improve her performance. Further, I told her that we were about to enter the last quarter of the FY 2002 performance cycle and I wanted to get Ms. Calhoun more engaged. If she continued to perform as she was, I would have to fail her on one or more of her critical elements.

I included in the email a draft of an email I was planning to send to Ms. Calhoun. Essentially, the email addressed those performance deficiencies cited previously in this affidavit. I decided not to send the email. I am not sure why. I wanted to give her the benefit of the doubt. I did not want her to fail.

I would like to state that in no way did Ms. Calhoun's race, sex, or age play a part in my rating of her performance or my comments pertaining to her performance for the FY 2002 rating period. Nor did I retaliate against her for participating in a previous EEO activity. The comments are true and accurate based on my observation of her work and the feedback I received from her team leaders. I did factor in that she was new to the Division. If I had not, based on her performance, she would have failed—resulting in a rating of "unsatisfactory."

In terms of her receiving an award which she alleges is evidence of satisfactory performance, everyone in my Division got an award. I thought it would only be fair to give her an award along with the other employees, since she was new to the Division and as an incentive to do better work.

000428

Page 6 of 7 Pages                           Initials: _/eh, 4/29/03_

EXHIBIT 38

PAGE 6 OF 7 PAGES

In respond to Ms. Calhoun's assertion that knowledge of IT is included in her position description as an addendum as well as under the Section entitled "Knowledge Required by the Position," I don't recall if this is the case. However, if it is included, it's meant to refer to only a general knowledge of IT is required in order to use the computer in her day-to-day work and not that IT is essential in order to perform her duties.

I have read the above statement consisting of seven (7) pages. It is true and complete to the best of my knowledge and belief. I have made all necessary corrections and additions, initialing next to each. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

_____          4/29/03
Affiant's signature                      Date

Subscribed and sworn to before me this 29 day of April, 2003

Jeanette Jerman Artis
Notary Public
District Of Columbia
My Commission Expires: Feb. 14, 2007

Page 7 of 7 Pages

000429

EXHIBIT 38
PAGE 7 OF 7 PAGES