# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

IONA D. CALHOUN,

           **Plaintiff,**

          **v.**

**PAUL F. PROUTY,**
**Administrator,**
**General Services Administration,**

          **Defendant.**

</td><td>

**Civil Action 06-01441 (HHK)**

</td></tr>
</table>

## MEMORANDUM OPINION

Iona Calhoun brings this action against Paul F. Prouty, the administrator of the General Services Administration, in his official capacity ("GSA"), alleging that GSA discriminated against her on the basis of her race and gender, and retaliated against her for administrative complaints and union activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.* (2006) ("Title VII"). Calhoun also alleges that GSA discriminated against her on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* (2006) ("ADEA"). Finally, Calhoun alleges GSA paid her less than male employees for substantially similar work in violation of the Equal Pay Act, 29 U.S.C. § 206(d) (2006) ("EPA").

Before the court is GSA's motion to dismiss or, in the alternative, for summary judgment [#42]. Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion should be granted.

## I.  FACTUAL BACKGROUND

Calhoun is a Black female who was 56 years old at the time of the first alleged incident, discriminatory non-selection.[1]  In December 2000, she was working in the Office of Information Technology ("OIT") as a GS-13 Computer Specialist.  That month, OIT announced a GS-14 Computer Specialist vacancy.  Paul Whitson, the Division Director of OIT, normally would have made the selection, but he was on vacation before the application period ended and when the selection was made.  Before leaving for vacation, Whitson discussed the position with the Deputy Director of OIT, Wanda Peterson-Parker, who made the selection in his absence.  Whitson told Peterson-Parker he believed Tokey Bradfield (an Asian-American woman over 40), who had worked for him in the OIT administrative office, was best qualified for the job.

Calhoun applied for the GS-14 Computer Specialist position before the application period ended, but after Whitson had left for vacation.  Thereafter, the human resources department forwarded a list of three individuals deemed "best qualified" for the position to Peterson-Parker; the list included Bradfield, Calhoun, and a third candidate (a Black woman).  Peterson-Parker selected Bradfield.  Shortly thereafter, Calhoun filed an Equal Employment Opportunity ("EEO") complaint.

In August 2001, Calhoun was reassigned to the Office of Real Property ("ORP") as a GS-13 Program Specialist.  Calhoun contacted the EEO office on May 31, 2002, informing that office of the transfer and later filed administrative complaints of discrimination in connection with her transfer based on race, age, sex, national origin, and reprisal.

_____

[1] Although the Amended Complaint purports to raise claims against GSA for wrongs that occurred from August 2001 to April 2005, (Am. Compl. ¶ 5), plaintiff also clearly alleges an incident of discrimination in December 2000, (Am. Compl. ¶¶ 25-31).

While at ORP in 2003 and 2004, Calhoun applied for GS-14 vacancies three times. Stanley Langfeld, Director of the Real Property Policy Division, was the hiring officer for each vacancy. For the first vacancy, in 2002, Langfeld selected Kenneth Holstrom, a white male. Shortly after, Calhoun filed an EEO complaint over her non-selection. The next year, Langfeld selected Robert Burmeister, a white male, for another position. When Burmeister declined the position, Langfeld closed the vacancy instead of filling it with another applicant. Several months later, Langfeld opened a substantially similar position and selected Virginia McDonald, a white female. The human resources department gave Calhoun a higher personnel score than Holstrom and Burmeister and a lower score than McDonald. Calhoun contacted the EEO office shortly after both non-selections and later filed a formal complaint.

While at ORP, Calhoun also made certain requests for training and leave, which were denied. During that time, ORP's policy was to allow employees to attend two training events per year so long as they were job related and within budgetary constraints. In 2002 and 2003, Calhoun attended, on average, more than two events per year.

In 2002, Calhoun requested, and Langfeld denied, permission to attend a human resources workshop, a Government and Media Perception seminar, an Armed Forces Communication Luncheon, a SmartCard meeting, and an E-Authentication and Technology Forum. Langfeld also denied Calhoun's requests to attend the Human Resources workshop and the SmartCard meeting as a union official. When Calhoun submitted a leave slip to attend the Human Resources workshop (after being denied permission to attend), her leave was also denied. Calhoun contacted and filed discrimination claims with the EEO office for each of these denials.

In 2003, Calhoun requested, and Langfeld denied, permission to attend the FOSE Expo (an IT tradeshow), E-Gov's Knowledge Management Conference, a Universal Standards of Professional Appraisal Practice course, and a Building Owners and Managers Association conference. Calhoun contacted and filed discrimination claims with the EEO office for each of these denials as well.[2]

Calhoun also received written performance reviews while at ORP. During that time, GSA annually rated employees "successful" or "unsuccessful." These reviews were not tied to any monetary benefit. In October 2002, Calhoun received a performance review for the past year rating her as "successful," but the review also contained comments by Langfeld that were critical of her performance. Calhoun filed a formal complaint of discrimination based on race, color, age, and reprisal in connection with the review. In October 2003, Calhoun received a performance review for the past year also rating her as "successful" and containing similarly critical comments by Langfeld.[3] Calhoun also alleges that Langfeld denied her the same employment awards as other employees.

Finally, Calhoun alleges that, from 2002 until her retirement in 2005, she was performing the work of a GS-14 but only being paid the salary of a GS-13, unlike similarly situated male employees.

---

[2] Calhoun also alleges that she was denied selection for an Advanced Leadership Development program. (Am. Compl. ¶ 8.) The identity and date of this program are not clear from the record.

[3] The Amended Complaint seems to allege that the 2002–2003 performance review was part of an EEO claim for "disparate treatment . . . based on race, gender, color, equal pay, and reprisal." However, there is evidence suggesting this alleged claim refers to objections Calhoun wrote on a copy of the performance review before it was filed, not a formal EEO administrative complaint. (*See* Pl.'s Ex. 2 at 79, 81 (Calhoun Dep.); *see also* Def.'s Ex. 24 (Oct. 2003 Performance Review).)

## II.  ANALYSIS

GSA moves to dismiss or, in the alternative, for summary judgment on all of Calhoun's claims.  For the reasons that follow, the Court grants the motion in its entirety.

A plaintiff must allege facts that, if true, would entitle her to prevail.  Fed. R. Civ. P. 12(b)(6).  A complaint which does not allege a set of facts that supports the claim must be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–563 (2007).

Summary judgment should be granted if there is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A fact is material if it would affect the outcome of the case under the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence shows a reasonable jury could find for the non-moving party.  *Id.*  A plaintiff who faces a motion for summary judgment must do more than "merely [assert] that the jury might, and legally could, disbelieve the defendant's denial" of discrimination; she must offer evidence supporting her allegations.  *Id.* at 256.

### A.      Title VII and ADEA Discrimination Claims

The bulk of Calhoun's claims arise under either Title VII or the ADEA, and stem from her non-selection for job vacancies, denial of training and leave, reassignment to ORP, performance reviews at ORP, and denial of employment awards.

Title VII prohibits an employer from discriminating against an employee based on race or sex.  42 U.S.C. § 2000e-16(a).  The ADEA prohibits an employer from discriminating based on age, 29 U.S.C. § 623(a)(1), against any employee over 40, *id.* § 631(a).  Both statutes also prohibit an employer from retaliating against an employee for protected EEO activity, such as

filing a complaint of discrimination with the Equal Employment Opportunity Commission

("EEOC"), 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).

If an employee believes she has been discriminated against, she must begin an

administrative complaint process by contacting an EEO counselor within forty-five days of the

allegedly unlawful acts.  29 C.F.R. § 1614.105(a)(1) (2009).  If the issue is not resolved within

thirty days, the employee may begin the formal complaint process.  *See, e.g.*, *In re James*, 444

F.3d 643, 644 (D.C. Cir. 2006) (outlining the administrative complaint process).  Failure to

follow this timeline or file a formal complaint deprives the district court of subject-matter

jurisdiction over a civil claim.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973);

*Park v. Howard Univ.*, 71 F.3d 904, 906-07 (D.C. Cir. 1995) (barring the plaintiff's Title VII

claim for failure to exhaust administrative remedies); *Washington v. Wash. Metro. Area Transit

Auth.*, 160 F.3d 750, 752–53 (D.C. Cir. 1998) (dismissing the plaintiff's ADEA claim for failure

to exhaust administrative remedies).

A Title VII or ADEA claim in federal court is analyzed under the *McDonnell Douglas*

framework, 411 U.S. at 802–805, as simplified by *Brady v. Office of Sergeant at Arms*, 520 F.3d

490, 494 (D.C. Cir. 2008).  Under *McDonnell Douglas*, the plaintiff has the initial burden of

establishing a prima facie case of discrimination or retaliation.  411 U.S. at 802.  A prima facie

case of discrimination requires the plaintiff to show (1) she is a member of a protected class; (2)

she suffered an adverse employment action; and (3) the action creates an inference of

discrimination.  *E.g.*, *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1150 (D.C. Cir. 2004).

A prima facie case of retaliation requires a showing that the plaintiff engaged in a statutorily-

protected activity and suffered an adverse personnel action and that there is a causal connection

between the two.  *E.g.*, *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999).  Once the plaintiff

has shown a prima facie case, the burden shifts to the defendant to offer a legitimate, non-

discriminatory reason for the allegedly unlawful action.  *McDonnell Douglas*, 411 U.S. at 802.

Once the defendant has provided a legitimate reason for its employment decision, the burden

shifts back onto the plaintiff, who must then show the defendant's non-discriminatory reason is

pretext.  *Id.* at 804.

Where Calhoun has failed to show that she suffered an adverse action, the Court need not

reach the *Brady* analysis.  520 F.3d at 494.  Because the Court concludes that Calhoun has failed

to show her denial of training and leave and her critical performance reviews were adverse

employment actions, Calhoun has not stated a prima facie case for these claims, and GSA is

entitled to summary judgment.

Since GSA has offered legitimate, non-discriminatory reasons for its remaining alleged

adverse employment actions, under *Brady* the only question before the Court is whether Calhoun

has presented sufficient *evidence* for a reasonable jury to conclude that GSA unlawfully

discriminated against her, *Brady,* 520 F.3d at 494; assertions and speculation are insufficient to

avoid summary judgment, *Brown*, 199 F.3d at 458–59.  The Court finds that Calhoun has not

presented sufficient evidence of unlawful discriminatory animus regarding the ORP non-

selections and her age, race, and retaliation claims regarding the OIT non-selection.

Finally, the Court concludes it does not have jurisdiction to hear Calhoun's sex

discrimination claim regarding her OIT non-selection, her claims relating to her transfer from

OIT to ORP, and her claims under the EPA.  Therefore, the Court also dismisses these claims.

1.      **Non-selection at OIT**

Calhoun alleges Whitson discriminated against her on the basis of age, sex, race, and

retaliation when he did not select her for a GS-14 position in December 2000, at OIT.[4]   Because

Calhoun has not produced evidence that Whitson's stated reason for not selecting her was

pretextual, GSA is entitled to summary judgment.

Calhoun argues that even though she had not applied for the position when Whitson told

Peterson-Parker to hire Bradfield, Whitson would have known who could apply for the position,

and he named the one applicant on the referral list who was not Black.  GSA responds with

Whitson's affidavit offering legitimate reasons for the non-selection.  Whitson testified he

worked with Bradfield for several years, that her work was always exemplary, and that she had

already shown him she could perform the duties of the GS-14 position.  Furthermore, in

Whitson's judgment, Calhoun's qualifications "were based primarily on education and . . . she

did not have the depth of experience [Bradfield] had."  (Def.'s Ex. 5 at 3 (Whitson Aff.).)

Calhoun attempts to counter Whitson's affidavit through Peterson-Parker's testimony that

Calhoun was the best qualified candidate, and Bradfield the least qualified, and that the decision

to hire Bradfield "could have been" racially motivated.  (Pl.'s Ex. 4 at 33 (Peterson-Parker

Dep.).)

---

[4] Defendant has shown that Calhoun waived her claim based on sex discrimination at the administrative hearing.  (Def.'s Ex. 1 at 7 (EEOC H'rg, Jun. 6, 2006).)  Plaintiff has also failed to submit evidence contradicting Whitson's testimony that he did not have knowledge of Calhoun's prior EEO activity.  (Def.'s Ex. 5 at 2 (Whitson Aff.).)  Therefore, the Court dismisses these claims.  *See, e.g.*, *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985) (requiring alleged discriminating officer be aware of prior EEO activity for there to be a prima facie claim).

Peterson-Parker's testimony is insufficiently probative of prohibited animus.  At issue is not the correctness of Whitson's decision to hire Bradfield, but whether he did so for his stated non-discriminatory reasons or rather because he was motivated by illegal considerations.  *See Fischbach v. D.C. Dept. of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).  Peterson-Parker's speculation that Whitson knew who "was qualified" and that the selection "could have been" racially motivated, in no way addresses Whitson's stated reasons for hiring Bradfield.  Indeed, Peterson-Parker herself testified to the EEOC counselor she did *not* believe the selection was based on age, race, sex, or prior EEO activity.  (Def.'s Ex. 39 at 2 (EEO Counselor Report, Jun. 7, 2001).)  Because Calhoun has not presented any evidence to refute Whitson's non-discriminatory reason, GSA is entitled to summary judgment on plaintiff's OIT non-selection claims.[5] *Brown*, 199 F.3d at 458.

## 2.    Non-selection at ORP

Calhoun also alleges that Langfeld discriminated against her on the basis of age, sex, race, and retaliation when he did not select Calhoun for three GS-14 positions in ORP between 2003 and 2004.  Because Calhoun has not produced sufficient evidence showing that Langfeld's benign explanation was pretextual, the Court concludes GSA is entitled to summary judgment.

GSA argues the selectees' "real property experience" made them more qualified than Calhoun.  Calhoun responds by noting human resources assigned her a higher personnel rating than two of the selectees, though the selecting officer would not have received the score.  Calhoun also disputes the relevance of real property experience to these positions.

---

[5] Without discriminatory intent (which plaintiff did not prove) Title VII does not provide a cause of action for pre-selection.  *E.g.*, *Washington v. Chao*, 577 F. Supp. 2d 27, 46 (D.D.C. 2008).

Calhoun's estimation of her credentials versus those of the selectees is again not the issue. Rather, the dispositive issue is whether Calhoun was not selected for the position because of unlawful discrimination. To survive summary judgment, Calhoun must submit evidence that would reasonably support a conclusion that Langfeld's stated reasons are pretextual. Calhoun has not submitted any such evidence. Accordingly, GSA is entitled to summary judgment on Calhoun's claims of discrimination in her non-selections at ORP.

### 3.   Denial of training and leave

Calhoun also alleges that Langfeld discriminated against her when he denied ten of her requests for training and leave in 2002 and 2003. (Am. Compl. ¶¶ 16, 19.)[6] GSA argues that Calhoun has failed to show the denials were adverse employment actions. The Court concludes that GSA is correct.

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Freedman v. MCI Telecomm. Corp.*, 255 F.3d 840, 845 (D.C. Cir. 2001) (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1436 (11th Cir. 1998)) (denial of training must be "materially related to the employee's job responsibilities or possibilities of advancement" to be adverse).

The closest Calhoun comes to alleging this level of harm is the statement "the completion of [the USPAP course] would *potentially* entitle her to a certificate that *could* enhance her career." (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 44 (emphasis added).) However, this class

---

[6] Calhoun seems to allege eleven denials of requests for training and leave. (Am. Compl. ¶¶ 8, 16, 19.) The Court only can identify ten from the record and complaint.

10

was the third in a series, and Calhoun did not pass the second class in the series; Calhoun has

also failed to show (or even properly to allege) that completing the course is all that would be

required to receive certification.  (*See* Def.'s Ex. 14 at 11 (email, Oct. 7, 2003) (detailing further

requirements for certification).)  Calhoun has not submitted evidence from which a reasonable

jury could conclude she suffered an adverse employment action from these denials of training.[7]

Therefore, GSA is entitled to summary judgment.  *Brown*, 199 F.3d at 457.

### 4.    Transfer to ORP

Calhoun also alleges she was discriminated against when she was transferred from OIT to

ORP.  GSA responds with evidence that Calhoun failed to timely file an administrative

complaint, (Def.'s Ex. 9 at 4 (GSA letter, Nov. 12, 2002)), depriving this Court of jurisdiction,

*Artis v. Greenspan*, 158 F.3d 1301, 1302 (D.C. Cir. 1998) (granting Fed. R. Civ. P. 12(b)(1)

motion for failure to exhaust administrative remedies).  GSA further argues Calhoun's transfer

was not an adverse employment action.  (Def.'s Mot. for Summ. J. at 31.)  For the reasons set

forth below, the Court must dismiss Calhoun's Title VII claims and grant summary judgment for

the GSA on Calhoun's ADEA claim.

A plaintiff bringing suit under Title VII must have exhausted her administrative remedies.

The exhaustion requirement requires a claimant to contact an EEO counselor within forty-five

---

[7] In addition, Langfeld testified he denied these requests for the legitimate reasons that the sessions did not sufficiently relate to the work of ORP or attendance was limited and the attendees had already been selected.  (Def.'s Mot. for Summ. J. at 8-12.)  Langfeld also denied Calhoun permission to attend two of those sessions as a union representative because the agreement between the union and GSA over what events union representatives must be allowed to attend did not include those Calhoun requested.  (Def.'s Ex. 22 at 1 (Official Reprimand); Def.'s Ex. 14 at 2 (email, May 9, 2002)).  Calhoun has submitted no evidence from which a reasonable jury could conclude these reasons are pretext. Even if she had established a prima facie case, GSA would be entitled to summary judgment.

days of the alleged discrimination.  29 C.F.R. § 1614.105(a)(1); *Bowden v. United States*, 106

F.3d 433, 437 (D.C. Cir. 1997).  GSA has submitted evidence showing Calhoun did not contact

the EEO counselor until more than 270 days after her transfer.[8]  Because Calhoun did not timely

contact the EEO, the Court lacks jurisdiction over her race, sex, and retaliation claims in

connection with the transfer.  The Court accordingly dismisses those claims.

     A plaintiff who brings a suit under the ADEA is not required to exhaust her

administrative remedies.  She is able to file suit directly in federal court.  Still, such a plaintiff is

required to inform the EEOC of her decision to file in federal court within 180 days of the

alleged discriminatory event.  29 U.S.C. § 633a(d); *see also Stevens v. U.S. Dep't of Treasury*,

500 U.S. 1, 5 (1991).  Here, GSA has not proven that Calhoun did not inform the EEOC of her

decision to file a lawsuit.  Consequently, for the purpose of analyzing the instant motion, the

Court must assume Calhoun *did* contact the EEOC.  *See Bowden*, 106 F.3d at 437 (the burden of

showing failure to exhaust administrative remedies lies with the defendant).  Still, Calhoun is not

able to prevail because she has not presented any evidence her transfer caused a significant,

tangible change in her employment status.  Because Calhoun has failed to show she suffered an

adverse employment action when she was transferred, her claim that she was discriminated

against on the basis of age must be dismissed.  *Brown*, 199 F.3d at 457.

### 5.   Calhoun's performance reviews

     Calhoun also alleges that Langfeld discriminated against her in performance reviews

containing criticism of her work.  GSA first argues that Calhoun did not file an EEO complaint

---

[8]  The Court may toll the forty-five day time limit for equitable reasons; however Calhoun
has submitted no reason justifying her lateness in contacting the EEO counselor.  *See Bowden*,
106 F.3d at 437.

concerning the 2003 review, depriving this Court of subject-matter jurisdiction.  GSA also argues

negative performance reviews are not adverse employment actions, and in any event, both

reviews rated her as "successful."  (*Id.* at 35-36.)

The record shows that Calhoun wrote her objections to the 2003 performance review on

the review sheet, but it does not show she filed a formal complaint on the matter.  Nevertheless,

since the burden is on GSA to show otherwise, for the purposes of analyzing GSA's motion for

summary judgment the Court assumes Calhoun contacted an EEO officer in a timely manner

concerning the 2003 performance review.  *See Bowden*, 106 F.3d at 437.

Even so, GSA is correct in noting that negative performance reviews are not by

themselves adverse employment actions.  *Brown*, 199 F.3d at 458.  Because Calhoun has not

presented evidence of adversity beyond those evaluations, the Court concludes that Calhoun has

not established a prima facie claim of discrimination, and GSA is entitled to summary judgment.[9]

*Id.*

### 6.  Denial of Employment Awards

Calhoun also alleges Langfeld denied her employment awards while she worked at ORP

because of her race, sex, color, and prior EEO activity.  GSA contends Calhoun was given the

same employment awards as her coworkers.  Calhoun has not offered any evidence supporting

her allegation of unequal employment awards.  Therefore GSA is entitled to summary judgment

on the claim.

---

[9] Calhoun also has not addressed GSA's contention that these reviews were not even
negative, (*see* Def.'s Ex. 19 (Fant Decl.) (at the time, GSA used a "two-tired Performance
Management System . . . [where] employees would receive one of two ratings . . . 'Successful' or
'Unsuccessful'"); Def.'s Ex. 20 (Oct. 2002 Performance Review) (rating Calhoun "successful");
Def.'s Ex. 24 (Oct. 2003 Performance Review) (also rating Calhoun "successful")).

**B.**     **Plaintiff's Equal Pay Act Claim**

Finally, Calhoun alleges that GSA violated the EPA by paying her less than male employees for substantially similar work.  Calhoun contends she was performing the work of a GS-14 and only being paid at the GS-13 level, while male colleagues performing work of equal skill, effort, and responsibility were being paid at the GS-14 level.  (Am. Compl. ¶ 83.)  GSA responds that this Court lacks subject-matter jurisdiction over EPA claims in excess of $10,000.  (Def.'s Mot. for Summ. J. at 29-30.)  GSA is correct and the motion is granted.

The EPA does not contain an independent grant of federal subject matter jurisdiction.  Absent such a grant, claims made under the EPA are subject to the Tucker Act, granting the Court of Federal Claims exclusive jurisdiction over claims in excess of $10,000.  28 U.S.C. § 1346(a)(2) (granting district courts concurrent jurisdiction with the Court of Federal Claims over civil actions "not exceeding $10,000" ); *Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003).  Neither Calhoun's complaint nor her memorandum in opposition to the instant motion alleges damages sought are less then $10,000.  Based on the complaint, the Court infers they are more.  Therefore, the Court lacks jurisdiction and Calhoun's EPA claims are dismissed.[10]

### III. CONCLUSION

For the foregoing reasons, the Court concludes that GSA's motion for dismissal or summary judgment must be granted in full.  An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United Sates District Judge

---

[10] Because the Court lacks jurisdiction it does not address GSA's other defenses with respect to Calhoun's EPA claim.